# HANS CROCKER, Complainant, Appellant,

### *vs.*

# JOHN G. BELLANGEE, impleaded with KNEELANDS, Respondents.

#### APPEAL FROM THE MILWAUKEE CIRCUIT COURT.

Distinction between deeds void, and voidable merely, in regard to the consequences to third persons, are highly important: While nothing can be founded upon a deed absolutely void, from deeds voidable merely, fair titles may flow.

A deed voidable for fraud in its inception, may be the foundation of a good title in the hands of one who has taken a conveyance in ignorance of the fraud.

A deed obtained from the grantor through fraudulent representations made by the grantee, is not void, but voidable only, at the election of the grantor: But the conveyance of the same land by the grantor to another person, is not the exercise of such election, and does not avoid the former deed.

In order to avoid a deed by the grantor on the ground of fraud practiced by the grantee, some proceeding must be had by the former, to which the latter is made a party: and a subsequent purchaser from the grantor cannot set up the alleged fraud of the first grantee to defeat the title of the latter.

The right of a vendor to avoid a sale or deed on the ground of fraud practiced by the vendee, is not a right or interest capable of sale and transfer, so as to enable a subsequent vendee of such right, for such cause, to attack the title of the first vendee. It is a mere personal right, incapable of sale or transfer.

This was a bill in equity to stay proceedings at law, in some eighty actions of ejectment commenced and prosecuted by the said Bellangee, against the said Crocker and others.

The bill set forth that on the 4th day of July, A. D. 1854, Edward W. Casey, then and still being a resident of New Bedford, in the state of Massachusetts, was the owner in fee simple of all the following real estate, to-wit: the undivided sixteenth part of the southeast quarter of section number nineteen, in township number seven, north of range number twenty-two east, in the county of Milwaukee, which said real estate so owned by said Casey, as aforesaid, was then, and still is worth

at least ten thousand dollars. And that John G. Bellangee of the said city of Milwaukee, defendant, did on said day come to the house of said Casey at New Bedford, and falsely and fraudulently stated to the said Casey, in substance as follows, to-wit: That he, (Bellangee), owned a large interest in said quarter section; that the whole was of very little value, and that the interest of the said Casey, of one sixteenth, was hardly worth looking for; that said tract of land was eight or ten miles from the city of Milwaukee; that it was very low and wet, and but a small part fit to build on, and worth very little for any other purpose; that there were so many owners, and so scattered about, that on that account alone it was scarcely worth looking at by the said Casey; that he (said Bellangee,) had bought all the shares except that of said Casey, and those of the heirs of one Noble, who had been in Canada, and of some woman in England; that he (said Bellangee,) had paid all the taxes; that said land was of little value to any body, much less to the said Casey; that he (the said Bellangee,) would have nothing to do with the land if he had not already got into it so deep and spent so much money on it as to make it safer to go on and try to improve it than it would be to give it up; that said land was then worth little or nothing, and it was a chance if it ever would be; that he had deeds from all the owners of the said land except said Casey, said heirs in Canada, and the said right of the people of England, which he (said Bellangee,) had spoken of; that he had paid the taxes on said tract of land for twelve or fourteen years; that heavy taxes had been levied for the purpose of county buildings, by virtue of a special act, and he had been compelled to pay those on the said interest of the said Casey, (the premises being undivided) for the purpose of preventing a sacrifice of the whole; that he had paid in taxes for the said Casey, two hundred dollars, and that the interest of the said Casey in said land, even if clear, was scarcely worth fifty dollars; that he (Bellangee,) would give said Casy fifty dollars for his said interest, in addition to the amount of taxes for which said Casey was then liable to him (said Bellangee,) as aforesaid; that he considered it as so much

money thrown away ; that he should then go to Canada, and endeavor to buy out the rights of the heirs of said Noble, and should also try to obtain those of the said persons in England, and if he failed he should keep possession of the entire land until the said parties in England and Canada should make their appearance, and should run his risk ; that his only reason of purchasing the claims of said Casey and of said persons in England and Canada, was to save himself the large amount which he had already paid ; that he had paid such amount in ignorance of the true character and value of the said land ; that the city of Milwaukee was growing in another direction, but not in the direction of said land.     And further, that the said Casey had never seen said premises ; that he had dealt somewhat extensively in lands in the western states, but is and has been a resident of the state of Massachusetts.     And that he told said Bellangee that his (said Casey's) papers relating to said western lands were with a person in Chicago ; that he knew he was the owner of a piece of land in Milwaukee, but not of a piece so far from Milwaukee, and that he wanted to write and ascertain about the lands and its description and value, and would then let said Bellangee know what he said Casey would do.     And the said Bellangee further stated and represented to the said Casey, that the said piece described by him (said Bellangee,) was no such piece as that alluded to by said Casey ; that said piece (which said Bellangee desired to purchase,) was at least eight or ten miles from said city of Milwaukee, and that the abstract (which said Bellangee then had,) showed him (said Casey) to be the owner ; that said Bellangee was in haste, being on his way to Canada to purchase out the right of said heirs, and would not wait ; that if said Casey should decline his proposition, he must immediately pay to the said Bellangee the two hundred dollars, which he had paid as aforesaid for taxes, or that he would sue him for the amount.

And further, that the said Casey, relying upon the said representations and statements of the said Bellangee, and believing them to be true, and being deceived by said representations and statements, and having then no means of knowledge, aside

from such representations and statements made as aforesaid, did, together with his wife, Susan Casey, in consideration of the said sum of fifty dollars, execute and deliver to the said Bellangee a deed of said undivided interest of said Casey, granting and bargaining the same to the said Bellangee, in fee simple, which said deed bears date on the fifth day of July, A. D. 1854.

And further, that said several representations and statements of said Bellangee were fraudulent and false; that said land is in the city of Milwaukee; that said interest of the said Casey was, and is worth at least ten thousand dollars; that said quarter section has been divided among the several owners thereof, (except said Casey, who was not made a party to the proceedings in partition hereinafter mentioned,) by the order of the District Court of the county of Milwaukee, in the territory of Wisconsin, before the formation of the present state government, and that eighty-nine acres and twenty-one hundredths of an acre, were by order of said court set off to the plaintiff, and marked upon the map made by the commissioner, appointed by said court, as lot one; and fifty acres and ninety-hundredths of an acre, were set off to Joel Kneeland, a party defendant to this bill, marked on said map as lot eight, and the said interest of the said Casey was included in the parts so set off to the plaintiff and the said Joel Kneeland as aforesaid.

And further, that said Bellangee had no interest in said quarter section or any part thereof, and no deeds of any part thereof from any owner or owners thereof. That at the time when said Bellangee made his said representations and statements no person by the name of Noble or his heirs owned any interest in said quarter section, and no person in England. That the said Bellangee never has paid any taxes upon the interest of the said Casey or upon any other interest in said quarter section and had no lawful claim against said Casey for any sum whatever. That said land was not low and wet and unfit to be built upon, but on the contrary the whole and every part thereof, was and is of great value for building purposes, and can be so used. That said land is in the second ward of the

city of Milwaukee, and that the said city has been rapidly
extending and improving in that direction; that the plaintiff
and the said Kneeland have always either paid the taxes levied
upon said interest of the said Casey, or have bid in said interest
at the tax sales, or have redeemed said interest from such sales,
and that the plaintiff and the said Kneeland respectively, and
those claiming as purchasers under them, each respectively
have for more than seven years last past been in the absolute
and exclusive possession of the said lots so assigned to the
plaintiff and the said Kneeland as aforesaid, and that very
great and valuable improvements have been erected upon dif-
ferent parts of said lots, and that a large number of persons,
to-wit, more than        hundred now live upon them.

And further, that the said Bellangee has been a resident of
Milwaukee for more than fifteen years, and still continues to
reside there; that he is a man of great intelligence and shrewd-
ness, and that he well knew that his said representations and
statements were untrue, and that the truth with regard to the
premises was, as has been hereinbefore alleged, and the plain-
tiff therefore charges that said deed from said Casey and wife
was fraudulently obtained by the said Bellangee, through his
false and fraudulent statements and representations aforesaid,
and that the said deed is void as against Casey and his assigns.

And further, that the said Bellangee has subsequently to his
obtaining said deed as aforesaid, and with no other title com-
menced an action of ejectment against the plaintiff for such
part of said interest of said Casey as was in his possession, and
has filed his declaration in the county court of Milwaukee
county, according to the statute in such case made and provi-
ded, to which said declaration the plaintiff has pleaded the
general issue of not guilty in due form of law, which said action
is now pending in said court.

And further, that the said Bellangee has commenced a large
number of other suits in ejectment against purchasers from
said Kneeland, to recover that part of said interest of the
said Casey so included in said lot so set off to said Kneeland

as aforesaid, as will hereinafter be more fully stated and set forth.

And the plaintiff further alleges, that for the joint protection and benefit of himself and of the said Joel Kneeland, and also of one Moses Kneeland, made a party defendant, and who is a purchaser of an undivided half of the interest of the said Joel in said lot so set off to said Joel as aforesaid, he, the said plaintiff purchased of said Casey his interest in said quarter section, and the said Casey disaffirmed and revoked said deed so fraudulently obtained from him by said Bellangee as aforesaid, to-wit: on the 15th day of February, A. D., 1855, and by a deed bearing date on the day and year last aforesaid, signed by himself and wife, assigned, transferred, and conveyed to the plaintiff, his heirs, and assigns, all his (said Casey's) interest in said premises, and covenanted to warrant and defend the same against all persons claiming or to claim by, through, or under him and his said wife, and authorized the plaintiff as such assignee, to pay back to said Bellangee said fifty dollars so paid by him (said Bellangee) as aforesaid, which said sum together with interest thereon, at the rate of seven per cent., the plaintiff is ready and willing and hereby offers to pay to the said Bellangee. And which sum of fifty dollars together with interest thereon, at the rate of seven per cent., from the said fifth day of July, A. D. 1854, to the date of the filing of this bill amounting to the sum of fifty-two dollars and fifty cents, the plaintiff as the assignee of the said Edward W. Casey caused to be tendered and offered to the said John G. Bellangee, on the 16th day of March, 1855, in payment and satisfaction of the said sum so paid by him to said Casey, and the said John G. Bellangee refused to accept and receive the same, and the plaintiff now brings the same here into court to abide the order and decree thereof in the premises.

And further, that heretofore and prior to the execution of the said deed by the said Casey and wife to the said John G. Bellangee, the followed named persons to-wit: Moses Kneeland, Glein Stoadman, and some seventy-eight others had respect-

ively acquired an interest in that portion of the said premises hereinbefore described, which was so as aforesaid set off and allotted to the said Joel Kneeland in the said partition suit, as purchasers of parts thereof from the said Joel Kneeland or from his grantees, or by the several deeds of conveyance to them respectively, now of record in the office of the register of deeds of Milwaukee county, will fully and at large appear. And that the said John G. Bellangee has subsequently, to his obtaining the said deed from the said Casey and wife as aforesaid, and with no other title to the said premises hereinbefore described or any part thereof, commenced separate and several actions of ejectment against each and every of the following persons to-wit: the said Joel Kneeland, the said Moses Kneeland, and the numerous other persons named as aforesaid, for such part of the said interest of the said Casey, as was in possession of the said last named persons, respectively as aforesaid, and in each of such several suits has filed his declaration in the county court of Milwaukee county, according to the statutes in such cases made and provided, to which said declaration in each of said cases, the said persons last named have, and each and every of them has pleaded the general issue of not guilty, in due form of law, and which said several actions are now pending in the said court.

And further, that all the said several persons in the last preceding paragraph mentioned against whom such suits have been commenced, except the said Moses Kneeland and Joel Kneeland, derived their title to, and right of possession to the portion of the said premises possessed and occupied by each of them respectively, by or through warranty deeds thereof, executed by the said Joel Kneeland, or the said Moses Kneeland, and that the title and right of possession of each of them is identical with and depends upon the title and right of possession of the said Joel Kneeland and Moses Kneeland, and that the said Joel Kneeland and Moses Kneeland represent all the interests of all the said persons respectively, and the said persons, against whom ejectment suits have been commenced as aforesaid, are so numerous that they cannot, with-

out manifest inconvenience and oppressive delays, in this suit, be made parties hereto, and the said complainant prays that the court may dispense with making all of them parties to this bill, except the said Joel Kneeland and Moses Kneeland.

In consideration whereof, &c. To the end, therefore, &c., and that by the order and decree of this court the said deed so executed and delivered by the said Edward W. Casey and wife to the said John G. Bellangee, as aforesaid, may be declared illegal, fraudulent and void, and that this court may by its decree, direct and compel the said deed to be delivered up and cancelled, and that the said defendant, John G. Bellangee, may be enjoined and restrained by the order of this court from using in any manner the said deed hereinbefore mentioned, and from taking possession of the premises therein described or any part thereof, and also from selling, assigning, granting, bargaining, or conveying, or encumbering the said lands in the said deed, and hereinbefore described, or any part thereof, and from in any manner intermeddling or interfering with the same or any part thereof, and that the said defendant, John G. Bellangee and his agents, solicitors, counsellors and attorneys may be perpetually enjoined and restrained from further prosecuting the said several suits so as aforesaid commenced by the said John G. Bellangee against the said complainant and the said defendants Joel Kneeland, Moses Kneeland, and the other persons aforementioned, respectively or any or either of them, and that your orator may have such other or further relief in the premises as the nature of his case may require and as shall be conformable to equity and good conscience. Prayer for injunction and subpœna, &c.

To which bill of complaint, the defendent filed a demurrer, assigning the following causes :

1. That the complainant hath not in his said bill of complaint made or stated such a case as could entitle him to the discovery or relief therein prayed against the defendant.

2. It appears from the face of the bill that the Kneelands ought to be parties complainant instead of defendant to lay the foundation for the prayer of the bill.

3. Because the representations charged in said bill of complaint to have been falsely and fraudulently made by this defendant were of immaterial matters.

4. Because the right to rescind or avoid the conveyance by Casey to Bellangee on the ground of alleged false and fraudulent representations made by Bellangee is personal to Casey himself and he alone could file a bill for such purpose. The right to sue in such case is not the subject of transfer. Casey might elect to exercise the right or not, but he could not sell it.

5. Because the deed by Casey and wife to the complainant having been obtained by the latter with full knowledge of the prior conveyance by Casey and wife to Bellangee and after actions of ejectment brought by Bellangee to recover possession, is void for barratry, champerty and maintenance.

6. Because the said bill of complaint is in other respects informal and insufficient. The demurrer was sustained, and the plaintiff appealed.

*J. S. Brown and Ogden*, for appellant.

This action was commenced for the purpose of declaring a deed of conveyance of certain lands, executed by Edward W. Casey and wife, to the respondent, and dated July 5th, 1854, illegal and void; and to compel the same to be delivered up and cancelled; and to restrain the defendant from disposing of the lands or using in any manner the said deed, for the reason that it was procured by the said respondent from the said Edward W. Casey and wife, by means of false and fraudulent representations, made by him to Casey, in regard to the character, situation, condition, location and value of the land, and the condition of the title thereto. The bill shows:

1. That in July, 1854, Edward W. Casey owned the land in question, in fee.

2. And states the value at $10,000.

3. That the respondent made a great variety of representations to Casey, calculated to deceive him in relation to the character, location and value of the land, and states the representations in detail.

4. That Casey had never seen the land, and was a resident of Massachusetts.

5. That Casey, relying upon the representations so made, conveyed the land in question to the respondent for $50, a grossly inadequate consideration.

6. That the representations so made by the respondent to Casey were false, and were made under such circumstances that they must have been *wilfully false*.

7. That Bellangee was, and for many years had been, a resident of Milwaukee.

8. That the respondent had commenced ejectment suits on his pretended title, against the appellant and the other defendants.

9. That the appellant, for the protection of himself and the Kneelands and their grantees, purchased Casey's interest in the premises in question, and that Casey, disaffirmed and revoked the said deed to Bellangee, on the 15th February, 1855, and tendered back the consideration paid by him, and interest.

10. That Bellangee obtained in the law, and in fact, only the assignment of a right of action, (considering his deed as valid,) because there was a possession or the land adverse to him. The respondent demurs to the whole bill, and thereby admits the facts stated in the bill of complaint, so that for the purpose of this argument, the facts are not disputed.

I. The deed from Casey and wife to Bellangee having been procured by and upon the false representations stated in the bill, was obtained by, and is stamped with fraud.

1. False representations of the *situation, location and value* of the lands is admissible evidence of fraud. *Sanford vs. Handy*, 23 Wendell's R., 268, per Nelson, judge. The false representations of the respondent that *he had paid taxes on the land*, or that he had tax titles upon it, amount to a fraudulent representation, and authorize the deed to be cancelled. *Tyler vs. Black*, 13 Howard Rep., 231, per Wayne, judge, p. 243; Willard's Eq. Juris.

As to what constitutes such fraud as will avoid a conveyance or contract, generally, see—*Smith* vs. *Richards*, 13 Peters R., 26, and cases there cited ; see also *Perkins* vs. *Rice*, 6 Littell R., 218. *Dobres* vs. *Stevens*, 3, Barn. and Cres., 612. 10 Eng. Common Law, 201. *Boney* vs. *Hollingsworth et al.*, 23 Alabama, 690. Story's Equity Jurisprudence, § 192, 193, and cases there cited. *Warren* vs. *Daniels*, 1 Minot & Woodbury, 90–103–107. *Daniel* vs. *Mitchell*, 1 Story's Rep. 173. *Arnslie* vs. *Medlycott* 9 Vesey, 13–21. *Shackelford* vs. *Handley's executors*, 1 A. K. Marshall, 370. 1 Maddock's Chancery, 202. *Breese* vs. *Wyman*, 9 Georgia, 430. *Smith* vs. *Mitchell*, 6 Georgia, 458–470. Willard's Equity Jurisprudence, 145, 147, 148 et seq.

2. The consideratson paid was grossly inadequate, and in connection with the representations, is evidence of 'fraud on the part of Bellangee in obtaining the conveyance. *Gifford* vs. *Thaw*, 1 Stockton 702. *Godfrey* vs. *Bradley*, 2 McLean, 412. *Hamet* vs *Dundas*, 3 Barr. 178 ; and gross inadequacy of price, when joined with inequality in the positions of the contracting parties, is a ground of *equitable relief*. Per Green, Chief Justice, 1 Halsted's Ch. Rep. 702–713–714. So also when coupled with other false representations or suspicious circumstances. *Lester* vs. *Mahan*, 25 Alabama, 445. *Wamack* vs. *Roger and Pullen*, 9 Georgia Rep., 60. *Picket* vs. *Logan*, 14 Vesey Ch. Rep. 214. 3. The representations made to obtain the conveyance constitute a crime by the laws of Massachusetts where the contract was made, and also by the laws of Wisconsin where it is sought to be enforced. Rev. Statutes of Mass. 725, Sec. 32–33. Rev. Statutes of Wisconsin, 693, Sec. 33–34.

II. The deed having been procured by fraud was void and should be set aside. Fraud avoids a contract, *ab initio*, both at law and in equity, whether the object be to deceive the public or one party, or one party endeavor thereby to cheat the other. For the law will not sanction dishonest views and practices by enabling an individual to acquire through the medium of his deception any right or interest. Chitty on Contracts, 586 *a*

and cases there cited. *Ludlow* vs. *Gill*, 1 Chipman, 63 or 47. *Gilbert* vs. *Hoffman* 2 Watts, 66 *Riddle* vs. *Murphy*, 7, Sergt. & Rawle, 256. *McChung* vs. *Leckey*, 3 Penn. Rep. 94. *Chess* vs. *Chess*, 1 Penn. 32. *Obeir* vs. *Hammel*, 3 Harrison 73. *Foxcroft* vs. *Devenshaw*, 2 Burr, 931. *Bright* vs. *Eynon*, 1 Burr, 390. *Livingston* vs *Hubbs*, 2 Johns. Ch., 112. *Evans* vs. *Edwards*, 13 Com. B. 77. 76 Eng. Com. Law, 775.

III. Or if not absolutely void, it is void at the option of the party defrauded, and in either case a court of equity, on clear proof of fraud, it appearing that the deed was based upon the misrepresentation complained of, will interfere and rescind the deed. Chitty on Contracts, 586–7. *Tyler* vs. *Black*, 13 Howard, 231. *Smith* vs. *Richards*, 13 Peters, 26, and other cases and authorities cited to first point. Willard's Equity Jurisprudence, 145, 147, 148, et seq. Story's Equity, § 192, 193.

IV. The bill alleges that Casey disaffirmed and revoked the deed to Bellangee, on the 15th February, 1855, and conveyed the premises in question to the complainant by a deed bearing date on that day, containing covenants of warranty.

1. If the deed from Casey and wife to the respondent was *void* for the fraud alleged, then it passed no title, and the deed to the complainant conveyed the whole estate, both legal and equitable.

2. If the deed from Casey and wife to the respondent was only void at the option of Casey, for the fraud alleged, it is submitted that by the disaffirmance and revocation charged in the bill it was avoided, and the entire estate remained after that act, reinvested in Casey as fully as if the deed had been void *ab initio*, and passed to the complainant by the conveyance to him.

3. That in any event, whether the deed from Casey to the respondent be considered void or voidable, it could at least only pass a naked, technical, legal title, while the whole equitable estate remained in Casey and passed to the complainant by his deed.

V. If the deed from Casey to the respondent was void at

Crocker vs. Bellangee et al.

the option of Casey, he made his election and disaffirmed the deed, and his acts stated in the bill in that behalf were a sufficient disaffirmance.

Any act on his part on becoming aware of the fraud practiced upon him, sufficiently distinct and unequivocal to exhibit his intention not to be bound by the contract which he had been cheated into making, disaffirmed it. At all events, any act of his of the same description and of equal notoriety with the original conveyance, would avoid it, as, by the execution of a new deed to another person. *Boal vs. Mix*, 17 Wendell, 115, 133; *Tucker vs. Moreland*, 10 Peters, 58; *Jackson vs. Carpenter*, 11 Johnson, 539; *Jackson vs. Burchard*, 14 Johnson, 123. In this case the possession never passed to the respondent, and therefore the conveyance to appellant was an act of equal solemnity and notoriety with the original conveyance to the respondent, and revoked it.

VI. The deed to the appellant was not void for champerty, maintenance, or barratry. *Walhimer vs. Brinkerhoof*, 3 Cowen, 264; Rev. Statutes, of Wis., p. 327. The appellant and his grantees were in possession and claiming title, and he might lawfully buy in an outstanding title to protect himself, and perfect their title.

VII. The conveyance to the appellant, he being in possession, operated, if not as an absolute conveyance of the whole estate, as an assignment of all the interest of Casey in the premises, and the interest so acquired, may be set up by him to defeat in the hands of the respondent the conveyance to him. *Walhimer vs. Brinkerhoof*, 3 Cowen Rep., 624; *Parker vs. Kane*, 4 Wis., 1.

VIII. By the deed from Casey, Bellangee obtained no seizin in fact or in the law. It was simply an instrument, which if valid, might be used to obtain a possession and seizin and to defeat any other conveyance from Casey. If, however, the instrument was obtained by fraud, it would be inequitable for Bellangee to use it either to obtain possession of the property or to deprive Casey of the power of selling, or what amounts to the same thing, to deprive a purchaser in posses-

sion under Casey of both possession and title; and courts of equity will always interfere to restrain an improper or fraudulent and inequitable use of an instrument.

*O. H. Waldo*, for respondent.

It is alleged in the bill that on July 5th, 1854, Edward W. Casey, owned the ten acres undivided, in the ¼ sec. of land described, in fee; and on that day bargained, and for a valuable consideration, sold and conveyed the same to the defendant Bellangee, by a deed in due form, duly executed and acknowledged, and duly recorded, (July 20, 1854,) in the county where the land lay.

Bellangee becoming thus seized in law of the ten acres, brought his action of ejectment against the complainant, and all the other actual occupants of the land, who were in without title or shadow of title.

Afterwards Crocker, having already appeared in the ejectment suit, on February 15, 1855, procured a deed to be given to him by said Casey and wife, by which they "assigned, transferred and conveyed to said complainant, his heirs and assigns, all his interest in the premises, and covenanted to warrant and defend the same," (*i. e.* his interest,) "against all persons claiming or to claim, by, through, or under him," &c., "and authorized the complainant as such assignee, to pay back to said Bellangee," the consideration paid by him. It is said that Casey disaffirmed and revoked the deed to Bellangee, but it is not stated how he disaffirmed and revoked.

On March 16, 1855, the complainant offered to pay the fifty dollars to Bellangee, and files this bill against Bellangee, (the plaintiff in all the ejectment suits,) and the two Kneelands, who were in the position of defendants in the same ejectment suits,) and on the ground of false and fraudulent representations alleged to have been made by Bellangee to Casey, on July 5th, 1854, (and upon no other ground,) seeks the decree of the Court to declare the deed by Casey to Bellangee, "illegal, fraudulent and void," "and to compel that deed to be given up and cancelled, and to restrain the said Bellangee

from using that deed in any manner, from taking possession of the premises, or any part thereof; from selling, conveying or encumbering, or in any manner intermeddling with the same, or any part thereof, and from prosecuting further his said several ejectment suits, or either of them."

I. The bill prays that Bellangee may be restrained from prosecuting his actions at law, not only against the complainant, but against his co-defendants, and all others claiming under his co-defendants. This cannot be done until the Kneelands or their grantees become complainants. The Kneelands are competent to apply to the court for relief, when they need or desire it, and it is simply impertinent for Crocker to ask for it on their behalf.

II. The representations upon the ground of which a court of equity will set aside a conveyance, must possess these qualities, to wit:

1. They must be of material matters, and not of trifles.

2. They must be of matters of fact, and not of mere opinion. Price, value, &c., are matters of opinion only—*prima facie*.

3. They must be of matters in their nature likely to lead a man of ordinary understanding, to part with his estate for less than its value.

4. They must have been believed, and must have actually influenced the party seeking relief to take the step to his own detriment, which he otherwise would not have taken, and which he asks the aid of the court to retrace.

5. They must be of matters not within the observation, or means of knowledge, (with the use of ordinary care and diligence,) of the party complaining.

6. They must be untrue.

It is not enough that there be several representations, each one possessing one or other of these essential qualities, and in the aggregate possessing them all. There must be some one or more in which they all conjoin—which are at the same time material matters of fact, likely to influence a common man to part with his estate, when he otherwise would not, really believed and acted on in the instance in question—not within

the knowledge or means of knowledge of the complaining party, and untrue. Each of these qualities is therefore essential to the representation on which the complainant is to rely. 1 Story Eq. Jurisp. § 191, 194, 195, 197, 199, 202, 203, 237. Many, if not all the representations enumerated in the complaint are of matters immaterial, and not in the least likely to mislead a man of ordinary understanding. The bill is therefore, in so far, bad on that account.

III. All material or essential facts must be alleged in the bill. They must be, not merely alluded to, stated hypothetically or recited as matters which are taken for granted, but must be all severally and distinctly stated upon positive knowledge; not upon information and belief.

It is not enough to say that Casey, *relying* upon the representations and statements of Bellangee—and *believing* them to be true—and *being* deceived by said representations and statements, and *having* no other means of knowledge, &c., gave the deed. He must say that he *did* rely upon the representations; that he *did* believe them to be true; that he *was* deceived thereby; that he *had no other* means of knowledge, and that he *would not* have given the deed now sought to be annulled, had not those representations been made. The complainant's bill is therefore totally defective on that account. Mitford Eq. Pleading, 41, 42, 163, and cases there cited; Story Eq. Pl. § 255-257; *Crosseing* vs. *Honor*, 1 Vern., 180; 13 How. Pr. R., 458; *Van De Sande* vs. *Hall;* Cooper Eq. Pl. 6; *Ouger* vs. *Holliday*, 11 Paige, 320; *Everts* vs. *Agnes and Swift*, 4 Wis., 343.

IV. It is essential that a party complaining in equity, should have some present subsisting interest in the subject matter of the suit. He will not be heard to intrude himself upon the court to complain of another's injuries. He must have a direct interest in the result; and that interest must appear upon the face of the bill. Story Eq. Pl., § 260-261; Mitford Ch. Pr., 154 to 163, and cases cited.

Crocker has no apparent interest in the result of this suit. He complains of a fraud practiced upon Casey, and not upon

himself; and that, in a matter in which Casey was solely interested and in which Crocker had no personal interest whatever. A conveyance induced by false and fraudulent representation is not void, but at most *only voidable*. It is voidable only on the motion of the *party defrauded*. Even the *injured party* cannot avoid it by a mere effort of the will to that effect, nor by any other act of his own alone, but only by invoking the aid of a court of competent jurisdiction. He can avoid it only in equity—that is to say, *only in a court of equity*. *Stevenson* vs. *Newonham*, 76 Eng. Common Law., Rep. 285; *Parker* vs. *Patrick*, 5 Term. Rep., 175; *Pilbrow* vs. *Pilbrow*, 57 Eng. Com. Law, 207; *Muley* vs. *Sherren*, 35 Eng. Com. Law, 519; *Zouch* vs. *Parsons*, 3 Burrow 1804; *Somes* vs. *Brewer*, 2 Pick., 184; *Vroonan* vs. *Phelps*, 2 John., R., 177; *Doe* vs. *Munsell*, 13 John., 430; *Franchott* vs. *Leach*, 5 Cow. 506; *Jackson* vs. *Hills*, 8 Cow., 290; *Osterhout* vs. *Shoemaker*, 3 Hill, 513; *Feret* vs. *Hill*, 80 Eng. Com. Law, 430.

Casey was the sole owner of the land in fee. Crocker had no interest whatever in it. Casey sold the land, received the consideration therefor, and conveyed the same with all the formalities known to the law, and therefore Bellangee became seized of the same, with the same title, and with all the title which his grantor had before. Casey had no title left and therefore had nothing to convey. It may be that Bellangee employed such unfair means to induce Casey to part with his estate as to entitle the latter to demand a re-transfer of the same to himself. Even if that it be so, the re-transfer will not be effected by his demand simply. If, in obedience to this demand, Bellangee should re-convey, then indeed he becomes re-instated, and may convey again to whom he will. But he cannot undo what he has done and re-invest himself with the estate with which he has just now voluntarily and formally parted, by declaring "*I rescind*." He cannot annul his deed by an effort of the will merely, or by a word from his mouth. Even the oral assent of Bellangee to the demand, or an actual re-delivery of the deed which he had received, would not operate to clothe Casey again with the title. The law, how-

ever much it may abhor fraud, will not permit the deliberate contracts of men solemnized with such formalities to be thus lightly broken up.

True, fraud vitiates all contracts into which it enters. But it must be first ascertained in a proper proceeding in a proper *forum*. Where a conveyance of real estate has been actually consummated with all the solemnities required by law, it cannot be undone on the ground of having been induced by *fraud in the consideration* in any other than one of two modes : 1st, by a voluntary re-conveyance by the purchaser ; or, 2d, by judgment or decree of a court of equity powers which shall supercede the necessity of such reconveyance.

All difficulty, if any at first appear, will be cleared away by recurring to the familiar distinction between *void* and *voidable* contracts. One which is in the proper sense void, needs no rescision—admits of no rescision. It is null *ab initio*, and the subject of it may be bought, sold, or otherwise dealt with, in all respects precisely as though it had never been—for it never hath been of any force. Instance, a forged or stolen deed, or a deed obtained by fraud in the execution, as by stealthily misreading or substituting a different instrument for the one which the grantor supposed himself to be executing. But a deed or contract which is merely voidable, is as absolutely valid as any other for all the purposes for which it was designed, until some act be done which is legally sufficient to render it void. Until so avoided it hath full force. The grantee under it, in the mean time, hath title and can convey ; and by such a conveyance a bona fide purchaser may acquire an indefeasible estate. The grantor hath nothing and therefore can convey nothing. I say the grantor hath nothing. Whether he will ever have any interest in the subject will depend upon his future action. If it be a deed obtained from him by fraud, he may take such steps as to become re-invested with that which he hath lost—or he may simply neglect those steps —or he may do such acts as will estop him from taking them ;

in either of which two latter cases the effect will be the same as though the original transaction had been fair.

Casey parted with his estate, but did absolutely nothing to re-invest himself with it before the alleged deed of his interest to Crocker. He did not buy back the land. He did not even demand a reconveyance. He did not pay back to Bellangee the purchase money which he had received from him, nor did he provide absolutely for the payment of the same. He simply "authorised" the complainant to pay it back—and left it to his discretion to do so or not, or to do so at such time as he should think fit. He did not so much as notify Bellangee of his intention to rescind, or revoke, or call in question the validity of the deed to him—nor do we know that he had any intention or desire to call in question the validity of that deed. He conveyed his interest in the premises to the complainant. He may not have designed this as in any manner hostile to Bellangee's title. How it could injure Bellangee's title it is impossible to see. "A grantor, after he has parted with his title, can do nothing to prejudice the rights of his grantee." *Jackson vs. Aldrich*, 13 John. R., 107 ; *Padgett vs. Lawrence*, 10 Paige, 180; *Crowell vs Hopkins*, 10 Paige, 183 ; 1 C. & H. notes, 655, 657, 662. We say, however, Casey not only could not rescind or annul the deed to Bellangee in any way but with the aid of a court of competent jurisdiction, but he did not, so far as we know, do anything with that intent. He therefore had nothing to convey ; and Crocker acquired nothing by his deed of Casey's interest. Without an interest, he cannot be a complainant. Even the misjoinder of one who has no interest with one who hath a sufficient interest, is a cause of demurrer. 1 Danl. Ch'y Pr., 348.

But will it be said that because Casey had a right to file his bill to set aside the conveyance to Bellangee, he therefore necessarily had such an interest as he could sell to Crocker ? Not so. Nothing is properly a subject of sale but property, or a right of property. This is a mere right of action—a right to sue : and it is not every right of action that is property and the

subject of sale. Rights of action (civil) are of two classes—to wit : those sounding in contract and those sounding in tort.

·And here lies the radical distinction. The former, being founded upon contract or agreement—that is to say—upon the assent of the party against whom they are to be enforced, are rights of property. They are, in their very nature, property. They are as really property, before suit brought as after judgment, and are always the subject of sale. The later, founded not upon the assent of the party but upon alleged wrongs committed by him, are not property. They are as real rights as any other, but they cannot be sold until they have been sued. They are rights of redress and not rights of property. When the decision of the court shall have supplied the want of the assent of the party, or superseded the same and the right of action shall have been merged in judgment—then, and not until then, can it become the subject of sale.

Casey suffered an injury for which he may have redress, if he properly sue for it. But he may elect not to sue for it. He hath a right of action simply, not a right of property—a right sounding in tort, not in contract—a right against Bellangee, but not founded upon the assent of Bellangee, but on an alleged wrong committed by Bellangee—a right which he may prosecute and finally vindicate through the judgment or decree of the court ; and in that manner, a right of property may arise, which will be the subject of sale ; but while it remains a mere right of action, it is no more property or the subject of sale than any other right to sue not founded upon the contract or agreement of parties, but merely sounding in tort. Even in regard to assignments of choses in action—of rights of action arising upon contract which are in the nature of property, as well before suit as after judgment, and were always assignable in equity, it hath ever been held that the assignor was a proper and generally an indispensable party to a suit to enforce the right in equity. Story Eq. Pl., § 153. "But where the assignment is not absolute and unconditional or the *extent or validity* of· the assignment is disputed or denied, or there are remaining rights or liabilities of the assignor, which may be

effected by the decree, then he is not only a proper but a necessary party." Story Eq. Pl., § 153. In every suit all the persons who have legal rights—as well as those having equitable rights, should be made parties to the proceedings. 1 Dan's Ch'y Pr., 241, 248, 249. The only ground upon which the assignee of a chose in action hath been admitted to appear as a party in equity while he could not at law, is that he was the equitable owner while the assignor was a mere trustee to his use—that he was the real owner by purchase. But we have seen that a bare right, to maintain a suit on the ground of an alleged wrong, is not a subject of purchase and sale, and therefore the pretended assignment is void—the assignor is still the only party in interest—and is not only an indispensable party, but the only party who can complain of the alleged injury.

The complainant therefore hath no interest. If indeed the court could entertain this bill, and should give the relief prayed, and annul the deed to the respondent, where would the title then be? What advantage could result to the complainant? By the bare striking out of the deed from Casey to Bellangee, the title would certainly revert to Casey; and since he is under no agreement further to convey, or to give further assurance to Crocker; since he has simply and only released to Crocker "*his interest*" at a time when he had no interest; and especially since he hath given no covenants which will occasion this subsequently acquired title to enure to the benefit of the. complainant as warrantee, it will remain in Casey, until he shall elect to convey again.

V. It is but repeating substantially the same point, in other words when we say that the right to file a bill to avoid a conveyance on the ground of fraud, is a personal right of the injured party. It has often been decided under statutes against usury, which rendered the contract tainted therewith, void, that the assignee of the equity of redemption cannot take that objection to a bill to foreclose a mortgage. *De Wolf* vs. *Johnson*, 10 Wheat., 368, 392. *Green* vs. *Kemp*, 13 Mass. Rep. 515. *Bridge* vs. *Hubbard*, 15 id., 103. It has also been held that "an assignee of a contract cannot insist upon fraud practiced in

the making of the contract, on the party under whom he claims."
*Carroll* vs. *Potter* Walker's Mich. Ch. R., 355. *Worsham* vs.
*Brown,* 4 Geo. Rep., 284. *The Cleveland Ins. Co.* vs. *Geo. Reed,*
*James II. Rogers et al.,* (an unreported case,) U. S. Dist. Court
of Wis. So also a subsequent purchaser of land cannot main-
tain his bill to set aside the lien of a prior judgment on the
ground of fraud, extortion or illegality in the consideration of
the judgment. That is a personal privilege of the injured
party. *French* vs. *Shotwell,* 5 Johns. Ch. R., 565–566–569.
*Shufelt* vs. *Shufelt,* 9 Paige, 137–144–5–6.

" It is stated to have been a principle of the Common Law,
that a fraud could be avoided only by him who had a prior
interest in the state affected by the fraud, and not by him,
who, subsequently to the fraud, acquired an interest in the
estate." *Upton* vs. *Bassett,* Cro. Eliz., 445, recognized in 3 Co.,
83 a. See these authorities on this particular point cited with
approval by Chancellar Kent, in 5 John. Ch. Rep., 566, *French*
vs. *Shotwell.* Even in the case of an *infant,* whose acts are
*voidable* (with certain exceptions) on the ground of his legal
incompetency to bind himself by an obligation or agreement,
" no one, but the party himself or his personal representatives,
can avoid his voidable deed or contract; for, while living, he
ought to be the exclusive judge of the propriety of the exercise
of a personal privilege intended for his benefit, and, when dead,
those alone should interfere who legally represent him." 2
Kent's Com., 236–7.

For a much stronger reason should the man, who, having
entered voluntarily into a contract when in possession of his
mature powers, seeks to avoid it on the ground of alleged impo-
sition, *hold this as a privilege strictly personal.*

Finally it is against public policy to permit a mere right of
action founded upon an alleged wrong, like that of Casey to
sue for the rescision of the deed to Bellangee, to be made the
subject of a sale or exchange.

The crime of maintenance consisted in stirring up, aiding
and promoting litigation wherein the party charged was not
the party in interest. The crime of champerty consisted simply

in the purchasing of a suit, or the right of suing. Both are strongly condemned and severely punished at common law. It is believed that the common law in that particular hath never been repealed or superceded in this state. Those crimes are therefore condemned by the law of the state of Wisconsin. Black. Com., vol. 4, p. 135.

" It seems that resorting to any machinery or contrivances in order to make a party interested in a suit, a witness on the trial amounts to maintenance." Black. Com., vol. 4, p. 136, note. *Bell* vs. *Smithe*, 7 D. & E., 366. 5 B. & C., 188.

Who can be safe in his estate, if his grantor, the day after selling and conveying to him, may allege imposition, and for a new consideration from a third party, transfer and release " *his interest* " to this new purchaser, and become at once the competent and *only necessary witness* to invalidate the first deed on the ground of fraud. What power shall prevent the commission of frauds and perjuries to which the law affords so speedy a reward.

*By the Court*, WHITON, C. J.   One of the principal questions presented in this case, is, whether the complainant (Crocker) is in a situation to avail himself of the alleged fraud of Bellangee, upon Casey.

Admitting that Bellangee practised a fraud upon Casey which would have enabled the latter to set aside the deed, does the subsequent conveyance by Casey to Crocker enable him to avail himself of the same fraud ?

It is contended by the counsel for Crocker that the deed from Casey to Bellangee having been obtained by fraud and imposition, is void for all purposes, and that consequently no title passed by it ; or that if not void absolutely, it is void at the option of the party defrauded, and that in either case, a court of equity will interfere and rescind it.

On the other hand it is contended by the counsel for Bellangee, that admitting the deed to have been obtained from Casey

by the false and fraudulent representations of Bellangee, it is not absolutely void, but voidable only on motion of the party defrauded.

It is said by the supreme court of Massachusetts, in deciding the case of *Somes* vs. *Brewer*, (2 Pick. R. 184), that "between the grantor and grantee in such cases, the technical difference between void and voidable, is wholly immaterial. Whatever *may be avoided*, may, in good sense, to this purpose, be called void, and this use of the term *void* is not uncommon in the language of statutes and of courts. But in regard to the consequences to third persons, the distinction is highly important, because nothing can be founded upon a deed which is *absolutely void*; whereas from those which are only voidable, fair titles may flow. These terms have not always been used with nice discrimination; indeed in some books there is a great want of precision in the use of them."

It seems to us that there is great truth in the remarks above quoted.

There is found a great want of precision in many of the authorities; the terms void and voidable, as applied to deeds, being often used indiscriminately. While it is true that nothing can pass by a deed absolutely void, a deed which is voidable only, may be the foundation of a good title in the hands of one who has taken a conveyance in ignorance of the fraud. The distinction therefore between a void deed and one which is voidable only, it is quite important to observe. We are of the opinion that the deed from Casey to Bellangee, (admitting it to have been obtained by a fraud practised by the latter upon the former,) was not absolutely void, but voidable only at the election of Casey. (See *Somes* vs. *Brewer*, above referred to, and the cases there cited. *Ousterout* vs. *Day*, 3 Hill, 513.) But it is claimed by the complainant, that if the deed from Casey to Bellangee was voidable at the option of Casey, the act of Casey in conveying the land to Crocker was the exercise of this option, and had the effect to avoid the deed to Bellangee, and to convey the title to Crocker. We do not see how this effect can be given to the deed to Crocker. This effect would have

followed if the deed had been given to defraud prior or subsequent purchasers of the land, because the statute declares that such conveyances shall be void as against such purchasers. (Rev. Stat. chap. 75, § 1.)

But it seems to us that something more was necessary to be done in this case, than to convey the land to another purchaser in order to avoid the first deed. It must be remembered that the *title* was conveyed to Bellangee, subject to be defeated by Casey, if the deed was obtained from him by fraud.

Now we cannot see how a conveyance to Crocker could have the effect to divest Bellangee of his title. The title being in him, some proceeding must be had, to which Bellangee was a party, in order to divest him of the title he acquired by his deed.

The cases referred to by the defendant have satisfied us that the proper course for Casey to pursue, was to avoid the deed by a bill in equity against Bellangee. But we do not see how the complainant Crocker can be permitted to set up the fraud of Bellangee in obtaining his deed, for the reason that he acquired no title to the land by his conveyance, if the views above expressed are correct.

It will be seen that we have expressed no opinion upon the subject of the fraud alleged to have been practised upon Casey by Bellangee. The view we have taken of the matter, rendering an opinion upon that subject unnecessary. The order of the circuit court is affirmed.