THE MILWAUKEE & MINNESOTA RAILROAD COMPANY vs. THE MILWAUKEE AND WESTERN RAILROAD COMPANY and others.

*Assignment of right of action—Mortgage of an equitable right of action—Mortgage sale—Description of property in notice of sale—Pleading.*

1. A right of action to set aside a release from the obligation of a covenant, on the ground that such release was fraudulently procured, cannot be assigned by the covenantee.

2. The La C. & M. Co., owning a continuous line of railroad from Milwaukee to La Crosse, consisting of an eastern and western division, and also a line through Watertown to a point on the former line, known as the "Watertown division," and having mortgaged the eastern and Watertown divisions to secure a debt of one million dollars, afterwards sold and conveyed the Watertown division to the M. & W. Co., which assumed $283,000 of said debt, and covenanted to pay that amount, and that upon default in any payment of said principal or the interest thereon, the La C. & M. Co. should re-enter upon said premises, and foreclose by advertisement, and sell the same. Subsequently the La C. & M. Co., to secure certain bonds, executed to B. a mortgage in trust for the bondholders, covering all the line of said road from Milwaukee to La Crosse, with rolling stock, franchises &c., and also "all the stock, railroad or other bonds * * * *causes of action, demands and choses in action of whatever nature,*" which said company might own or have any interest in on the day of its first making default on said bonds. On default made, B. foreclosed under the power, and sold the premises &c., as described in the mortgage; and the plaintiff, claiming under that sale, seeks in this action to enforce the above described covenants of the M. & W. Co. *Held*, on demurrer,

(1.) That whether or not a right to enforce said covenants could be mortgaged by general language like that contained in the mortgage to B. (a point not here decided), still such a right would not pass by the mortgage sale unless a more definite description of the same were given in the notice of sale, so that purchasers might know what they were purchasing.

(2.) That the complaint, not averring specifically that said covenants of the M. & W. Co. were sold at the foreclosure of the mortgage to B., nor that the price bid for the property was in any way dependent upon the existence of those covenants, does not show that the plaintiff has a right to maintain the action.

(3.) Whether the fact that the mortgage to B. was made *subject to the million dollar mortgage* would prevent the covenants of the M. & W. Co. in regard to paying off a part of said million dollars from passing under said mortgage to B., is not here determined.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff sought in this action to avail itself of certain covenants of the defendant company in a deed of indenture entered into between the latter and the La Crosse & Milwaukee Railroad Company, to whose rights in that behalf plaintiff claims to have succeeded. The complaint alleges the execution by the La Crosse & Milwaukee Railroad Company, in 1858, of mortgages or trust deeds to William Barnes, as set forth in the report of the report of the preceding case, *ante*, p. Said mortgages covered the line of the company's road from Milwaukee to La Crosse, with all the real property, rolling stock and franchises connected with said road, and also, among other things not important here, "all and singular the stock, railroad or other bonds, bills of exchange, promissory notes, accounts, *causes of action, demands and choses in action, of whatsoever nature,*" which said company might own or have an interest in on such day as it might first make default in the payment of any interest or principal due on the bonds secured by said mortgages. The complaint then contains the necessary averments to show a due foreclosure of said mortgages by the trustee under a power contained in the instruments, and a sale by him at public auction May 21st, 1859, of "all property, rights, privileges, franchises, things in action, and other things in said mortgages described;" that Barnes became the purchaser in trust for the bondholders; and that the owners and holders of a large majority of the bonds thereupon organized the plaintiff company, and took a conveyance from Barnes of the property so puchased, and that the same was not redeemed. It

then avers that, by virtue of said facts, the plaintiff, from and after May 21, 1860, became, under the laws of this state, " the successor of the La Crosse and Milwaukee Railroad Company, as to all the property and things described in said deeds, and the owner of and clothed with all the rights, privileges, franchises and property, real and personal, and things in action, and effects of every nature and description, before and then belonging to said La Crosse and Milwaukee Railroad Company, wherever situated and however circumstanced, subject only to such valid and legal liens and incumbrances thereon as were prior to said first [trust] deed to said Barnes ; and that said [plaintiff], being by law an incorporated company, composed of the creditors of the said La Crosse & Milwaukee Railroad Company, and purchasers at said foreclosure sale, as corporators, has a legal right to object to, resist and set aside all conveyances, negotiations, sales, transfers, leases, mortgages or judgments, which were or have been made or suffered by said La Crosse & Milwaukee Railroad Company with intent to hinder, delay or defraud its creditors ; and has the right to object to, resist and set aside every illegal, unjust or fraudulent claim of any person or persons against the said La Crosse and Milwaukee Railroad Company, which is apparently a lien or incumbrance upon any of the property, rights, privileges, franchises or other things whatsoever of said last named company, which were embraced or described, or intended to be embraced or described, in either of said trust deeds to said Barnes ; and has the right to collect and enforce all actions and causes of action existing in favor of said La Crosse and Milwaukee Railroad Company, and conveyed by said trust deeds to said Barnes and either of them." The complaint then alleges, in substance, the following facts : In August, 1857, said La Crosse & Milwaukee R. R. Co., to secure the payment of bonds amounting to one million dollars, executed a mortgage or deed of trust to James T. Soutter and Greene C. Bronson, of its line of road from Milwaukee to Portage City, and also its road from Watertown by way of Colum-

bus to its point of intersection with said main line, with the real property connected therewith, the rolling stock, equipments, franchises &c. ; and the trustees were empowered, upon default in payment of the bonds secured by said instrument, to foreclose by advertisement, and sell and convey the property. In December, 1857, the La Crosse & Milwaukee Company sold to the Madison, Fond du Lac & Michigan Railroad Company [the defendant company in this action under another name], the "Watertown division" of its road, so called, being the line of its road from Milwaukee by way of Watertown and Columbus to the point of intersection with the direct line through Portage City to La Crosse. The purchase money was one million dollars ; and in the deed of indenture executed by the parties, the title conveyed is declared to be subject to certain other liens, and also subject to a portion of the above named mortgage for one million dollars, to wit, the sum of $283,000, which the indenture declares "shall hereafter at all times be taken   *   *   as the amount of said mortgage justly chargeable upon said line so hereby conveyed, with interest proportionate thereon, to be paid from time to time as the same matures (both principal and interest) by the party of the second part, upon the bonds issued by the first party and secured by said last mentioned mortgage." The second party then covenants and agrees to receive the conveyance subject to the charges, liens, incumbrances and liabilities aforesaid, "and to defend and protect the party of the first part from the payment of any moneys, the foreclosure of any mortgages, or from being in any manner charged and made liable in the premises [otherwise] than as above expressed and stipulated," &c. It is further agreed by the second party that in case it should make default in the payment of any interest or principal to become due on any mortgage debt so assumed by it, and should continue in default for twenty days, the first party might revoke and declare null said indenture, and might proceed to demand and should be entitled to recov-

er immediate possession of all the property therein named and conveyed, and the second party should peaceably surrender possession of the same, and thereupon the first party should proceed by advertisement in manner specified to foreclose, and to sell the property &c. There was a further agreement that the second party should receive and hold all earnings of the road, over and above current expenses, in trust for the first party so far as necessary, and should keep the same deposited, as they accrued, in some reliable banking house to the credit of a responsible trustee, and cause the same to be paid over to the first party at least ten days before the same should become due and payable by the second party as interest on said $283,000, and to pay all other principal and interest thereby assumed, when due. This indenture was duly recorded before the mortgages to Barnes were executed. The name of said Madison, Fond du Lac & Michigan company was afterwards twice changed, and by ch. 21, Private Laws of 1861, it became "*The Milwaukee & Western Railroad Company.*" The interest which said defendant covenanted by said indenture to pay the La Crosse & Milwaukee Company at sundry times in 1858, 1859, 1860, 1861 and 1862, specified in the complaint, amounting in the aggregate to $101,880, was never paid by the defendant; but said La Crosse & Milwaukee company paid the whole thereof up to March 1st, 1859, amounting to $33,960. Proceedings were commenced by Bronson and Soutter in 1859, to foreclose the mortgage or trust deed to them, and in January, 1862, a decree of foreclosure and sale was obtained. The complaint then avers a breach of its covenants by said defendant company, in that it has not held all or any of its earnings over and above current expenses, in trust for the La Crosse & Milwaukee Company, or the plaintiff, nor kept the same or any part thereof deposited with any responsible banking house to the credit of any trustee appointed as in said indenture provided, but has diverted said funds realized from operating said road, to a great amount (viz., more than one hundred thousand dol-

lars), to other purposes specified in the complaint, and unless restrained by injunction, will apply a large amount of said net proceeds now on hand, and that may hereafter accrue, to a certain extension of the line of its road, in violation of said covenants. ·The defendant company is further alleged to be utterly insolvent. The complaint then avers that "the defendants sometimes fraudulently pretend that the effect of the covenants of said company defendant contained in said indenture * * has been destroyed by some release or contract made by and between the said defendant company and the said La Crosse & Milwaukee Railroad Company; but that if any such pretended release ever was made, executed or delivered by said La Crosse & Milwaukee Railroad Company, the same was made, executed and delivered after the registration of both of said mortgages or trust deeds to said Barnes, and after the registration of said indenture, * * * and that the same was never formally authorized or ratified by the board of directors of said La Crosse & Milwaukee Railroad Company at any legal meeting in this state, until after default was made by the said La Crosse & Milwaukee Railroad Company in paying a part of the interest on the bonds secured by the said trust deeds to said Barnes; and that the same, therefore, is null and void as against the rights of the plaintiff under the said recorded mortgages to said Barnes; * * * and that if any such release ever was obtained in name and form from said La Crosse & Milwaukee Railroad Company, the same was obtained by fraud, and is therefore void, and by the following among other fraudulent combinations and misrepresentations: that one Alfred Noxon was largely interested in the stock and property of the defendant company, and was also a director of the said La Crosse & Milwaukee Railroad Company, and that the said Noxon, fraudulently concealing from the other directors of said La Crosse & Milwaukee Railroad Company that he was at all interested in the defendant company, urged and advised the said board of directors to release said company defendant from its obligations,

or some of them, contained in said indenture; and the other directors of said company, believing that said Noxon was interested only for said La Crosse & Milwaukee Railroad Company and advising solely for its interests, made, if any ever was made, the said pretended release, or authorized it to be made; and that the same is, for that reason and because it was obtained by fraud, absolutely null and void." The other defendants are made such as claimants of interests subsequent and subject to that of the plaintiff. Prayer, for the appointment of a receiver, to operate the defendant's road, and apply all proceeds, over and above necessary repairs and running expenses, to the payment of the several sums due and payable from said defendant company; that defendants be restrained from applying any net proceeds of said road to any other object until said sums be paid; that the defendant company be declared indebted to the plaintiff for said several sums due from and payable by it under its covenants as above stated, with interest thereon, and that plaintiff have judgment therefor; that the defendants be barred and foreclosed of all rights in said road, and the same be sold, and from the moneys so made and paid into court, the amount now due the plaintiff be paid, and from the remainder, kept in said court, further payments of principal and interest be made, &c.; and for general relief.

A demurrer to the complaint, as not stating a cause of action, was overruled; and the defendants appealed.

*Emmons & Van Dyke*, for appellants, contended that the La Crosse & Milwaukee Company itself could not set aside the release executed by said company to the defendant company, in consequence of the alleged fraudulent acts of Noxon, but could only have a remedy against him individually; and that the right of action by that company, in such a case, could not pass to the plaintiff. *Crocker v. Bellangee*, 6 Wis., 645. 2. Independently of the release, the plaintiff could not enforce the covenant for the payment of the $283,000. The case is utterly barren of any fact or circumstance to show the plaintiff equi-

tably entitled to take advantage of our obligations, if still existing.   1 Story's Eq. Jur., secs. 634a, 1233a; *Gouverneur v. Lynch*, 2 Paige, 300 ; *Skeel v. Spraker*, 8 id., 182 ; *Patty v. Pease*, id., 277 ; *Ogden v. Glidden*, 9 Wis., 53.   Our covenant was a personal one with the La Crosse company, with which the plaintiff is in no wise connected.   But what settles all claim or pretense of equity against the plaintiff, is the fact that the Barnes mortgage was made expressly subject to the Bronson & Soutter mortgage, "subject to the amount of one million dollars."   *Bronson v. The La Crosse Railroad Co.*, 2 Wallace, 283 ; *French v. Shotwell*, 5 Johns. Ch., 555; *Reading v. Weston*, 7 Conn., 409; *Newman v. Kershaw*, 10 Wis., 333 ; *Brooks v. Avery*, 4 Coms., 225.   3. Conceding that the plaintiff could, by way of indemnity, resort to our covenant, it could not maintain suit until it had *paid* the mortgage mentioned in that covenant.

*Matt. H. Carpenter*, for respondent, argued that upon this demurrer it must be assumed that all pretense of a release of the defendant company from its covenants are false and fraudulent. 2. The old company was owner of the railroad from Milwaukee to Portage, encumbered by a mortgage of a million of dollars ; and was also owner of defendant's contract to pay $283,000, and the interest, towards the liquidation of that mortgage.   Being such owner, it conveys the eastern division to Barnes, subject to the mortgage of a million, and assigns to Barnes the defendant's covenant to pay $283,000 of that million.   In other words, it puts Barnes in its place as to the property and the contract of the defendant.   There is no doubt that as between the plaintiff and the bondholders of the mortgage to Bronson and Soutter, the eastern division is charged with the whole million ; but towards defraying that sum the plaintiff holds the defendant's agreement to pay $283,000 and the interest thereon.   The mortgage to Barnes of the *choses in action* of the old company vested in him as mortgagee, and in the purchaser at the foreclosure sale under that mortgage, this cov-

enant of the defendant company. The purchase of the entire subject matter of the Barnes mortgages, and its present ownership by the plaintiff, is clearly set out in the complaint. What was bid at the Barnes foreclosure sale, was bidden as much for the defendant's covenant as for the eastern division itself; and it is no more necessary to aver that in bidding the amount bid at the sale, the party had this covenant in view, than it is necessary to aver that the eastern division was in view. The bid was made with reference to *all* the mortgaged property. When the La Crosse company paid, as stated in the complaint, the interest on the million mortgage due in 1858 and March 1, 1859, the defendant became liable to pay that company $33,960. That company's right of action to recover that sum was mortgaged (as it might be under ch. 78, Pr. Laws of 1856), and the foreclosure of the mortgage vested this *chose in action* in the plaintiff, whose right to recover *at least* so much against the defendant is perfect. But defendant's covenant was to pay, and to protect the old company (and its assignee of the contract) "from the payment of any moneys, the foreclosure of any mortgages, or from *being in any manner charged and made liable in the premises.*" This covenant entitles the plaintiff to an action as soon as judgment is rendered, whether actually paid or not. *Smith v. Ch. & N. W. R. R. Co.*, 18 Wis., 17.

COLE, J. It is not at once obvious upon what ground the plaintiff below is proceeding in this action. There are some allegations in the complaint which would authorize the inference that the plaintiff company, because it is largely composed of creditors of the La Crosse & Milwaukee Railroad Company, and has acquired the property bid in by the trustees at the sale under the Barnes mortgage, claims to have the right to object to and set aside all conveyances, negotiations, sales and transfers which have been made or suffered by the La Crosse & Milwaukee company, with intent to defraud its creditors; and more particularly that it has the right to take advantage of the

alleged fraudulent acts of Noxon, in procuring the deed of release mentioned in the ninth paragraph of the complaint.

Now, admitting that the facts there alleged present a case which would entitle the La Crosse & Milwaukee company to have the release set aside on account of these acts of fraudulent concealment by one of its directors of his interest in the defendant company, and assuming that the further fact appears that this right of action has been assigned by the La Crosse & Milwaukee company to the plaintiff, the question would then arise, whether the release could be avoided on the application of such plaintiff, the La Crosse & Milwaukee company making no complaint of the fraud whatever. In other words, is this mere right to litigate the question, and to set aside the deed of release on account of fraud practiced upon the assignor, a subject of assignment and transfer; and will a court of equity allow the assignee to stand in the shoes of the assignor in respect to the remedies? On the part of the counsel for the appellants it is insisted, that in whatever light these matters in the complaint are viewed, whether Noxon be charged with actual or constructive fraud, at most they merely show a right of action in the La Crosse & Milwaukee company— one which could be asserted or not at its option, but by no one else claiming as assignee or grantee; and that the principle was so decided in the case of *Crocker v. Bellangee*, 6 Wis., 645. In that case Bellangee was alleged to have imposed upon and defrauded one Casey in obtaining a conveyance of land. Crocker, as Casey's subsequent grantee, sought to avoid the former conveyance for the fraud perpetrated upon the grantor; and it was held by this court that the bill could not be maintained. In *Prosser v. Edmonds*, 1 Younge & Coll., 481, will be found a very interesting and satisfactory discussion of the question, whether the right to file a bill to set aside a legal instrument for fraud committed upon the assignor is assignable; and it is held that it is not. A reference to these authorities is all which probably need be said at this time in regard to the alle-

gations above cited, and upon the point whether the plaintiff company could avoid the release for the alleged fraudulent act of concealment of Noxon, even if this right of action had been assigned to it by the La Crosse & Milwaukee company.

And further, whatever might be the inference drawn from some averments in the complaint, the counsel for the plaintiff company, in the argument filed, does not place its right to recover upon that ground. But he insists, as the legal result of the various matters stated in the complaint, that the plaintiff company has the right to have enforced the various covenants contained in the indenture known as exhibit 3, as against the defendant company.    This indenture was entered into on the 24th day of December, 1857, between the La Crosse & Milwaukee Railroad company, of the first part, and the Madison, Fond du Lac & Michigan Railroad Company, of the second part. The corporate name of the latter company has been changed by different acts of the legislature, until it has become known as "*The Milwaukee & Western Railroad Company,*" the defendant company.   By this indenture the La Crosse & Milwaukee company sold and conveyed to the defendant company that portion of its road known as the "Watertown division," together with the lands granted by Congress appertaining to that division.    At this time there were various liens upon the road of the La Crosse and Milwaukee company, among which was a mortgage for one million dollars covering the division from Milwaukee to Portage City and the "Watertown Division."   As a part consideration for the conveyance of this last road to the defendant company, the latter assumes the payment of the sum of two hundred and eighty-three thousand dollars of the one million mortgage, with interest thereon, as the same, interest and principal, should mature ; and also enters into the covenants and agreements with the party of the first part, which are set out in the foregoing statement of the case, pp. 177–8.

It is alleged in the complaint that the defendant company has

failed to keep these several covenants ; and the plaintiff company claims the right to have them enforced in its favor ; that it be let into the possession of the defendant's road, and be permitted to proceed and foreclose the rights and interests of the defendant company in the same, as provided in the above stipulations. If the plaintiff company has a right to this relief, it must grow out of the following matters stated in the complaint : In June and August, 1858, the La Crosse & Milwaukee company made a mortgage and supplement, to secure two million dollars of bonds to be issued thereunder, to one *Barnes* as trustee, whereby the road direct by way of Portage from Milwaukee to La Crosse was conveyed in mortgage, with all its railroad property real and personal and mixed, with its franchises, lands granted for the purpose of completing said road by Congress and the state legislature, and " also all and singular the stock, railroad or other bonds, bills of exchange, promissory notes, accounts, *causes of action, demands and choses in action of whatsoever nature,* which may be owned, or in which the said railroad company may have an interest on such day as the said railroad company may first make default in the payment of the interest or principal, or any part thereof," which might thereafter become due on the bonds issued under the mortgage. In February, 1859, the La Crosse & Milwaukee company having made default in the payment of a part of the interest due upon the bonds issued under this mortgage, the trustee, under the power of sale in the mortgage, proceeded and foreclosed the same, by selling " all property, rights, privileges, franchises, things in action, and other things in said mortgage and supplemental mortgage to him said Barnes described." It appears that Barnes, no other person or body having made a bid, purchased the property above described for $1,593,333.33 for the benefit of and in trust for the holders of the outstanding bonds secured by the mortgage. Afterwards, on the organization of the plaintiff company, principally by the holders of said bonds, Barnes conveyed to it all the property and things by him " purchased

as aforesaid." Now although it was expressly stated in the Barnes mortgage that it was subject, among other liens, to the "amount of one million dollars" secured by a mortgage on the eastern division of the road, yet, since the mortgage to Barnes purported to convey all "causes of action, demands and choses in action, of whatsoever nature," which might be owned by the La Crosse & Milwaukee company, or in which it might be interested, it is claimed that by virtue of that language, and the foreclosure of the Barnes mortgage and conveyance by the trustee as above named, the plaintiff company is now the actual and legal owner and equitable assignee of all the covenants in the indenture entered into between the La Crosse & Milwaukee company and the defendant company.

It will be seen, however, that there is no reference whatever in the Barnes mortgage to the indenture existing between the La Crosse company and defendant; and I have very great doubt whether a cause of action growing out of its stipulations in favor of the La Crosse company would pass under the vague and indefinite language there employed. The subjects in this clause are described as being all "causes of action, demands and choses in action, of whatever nature, which may be own-ed, or in which the La Crosse company may have an interest," on such day as it makes default in paying the principal or in-terest on the Barnes mortgage. It seems to me that it would be very difficult to tell from this description, upon what this part of the instrument was to operate. What causes of action, de-mands and choses in action were actually intended to be con-veyed? A railroad company, in building and operating two or three hundred miles of road, must necessarily be engaged in a vast variety of business transactions. And can it, in this indefinite, general and uncertain manner, transfer by way of mortgage all such causes of action as may exist or subsequent-ly accrue to it growing out of those transactions? See *Chyno-weth v. Tenney*, 10 Wis., 397. Assuming that causes of action are proper subjects of a chattel mortgage, will such a general

description of them in the mortgage be sufficient to transfer them to the mortgagee? It may be impracticable to set forth in a chattel mortgage with precision all the articles embraced in it, so that without reference to other evidence or sources of information one could tell by an inspection of the mortgage the property intended to be conveyed. But safety and sound principle would seem to require that the description of the property should be such as to enable third persons to identify it, aided by inquiries which the mortgage itself indicates and directs. *Lawrence v. Evarts*, 7 Ohio St., 194, lays down this rule ; and it is certainly founded in good sense. In addition to the authorities referred to in the opinion in that case, see *Bullock v. Williams*, 16 Pick., 33 ; *Barnard v. Eaton*, 2 Cushing, 294; *Goulding v. Sweet*, 13 Gray, 517; *Kemp v. Carnley*, 3 Duer, 1; *Crow v. Ruby*, 5 Missouri, 484; *Newman v. Tymeson*, 13 Wis., 172 ; *Otis v. Sill*, 8 Barb., 102; 4 Met., 306. It would be utterly impossible, by any process of investigation, to tell, at the time the Barnes mortgage was executed, what causes of action might accrue to the La Crosse company, and probably very difficult to ascertain what had already accrued. But the stipulations in the instrument executed by the defendant company might easily have been described in the mortgage, if it had been intended to transfer them.

It is likewise claimed by the counsel for the defendant company, that in no possible event could the plaintiff company have the benefit of the covenants above cited, since the Barnes mortgage was made expressly subject to the million mortgage. There are no facts or circumstances, it is said, stated in the complaint, to take the case out of the ordinary rule which governs the rights of purchasers of an incumbered estate. And since the Barnes mortgage was made in express terms subject to the million dollar mortgage, this, it is argued, furnishes indubitable proof that it was the intention of the La Crosse company to deprive those claiming under the Barnes mortgage of any equity which might otherwise have sprung from the circum-

stance that the million mortgage covered the "Watertown Division," and the defendant company had entered into a stipulation to pay a portion of it. Whether this position is sound in view of the matters stated in the complaint, or whether indeed the clause in the Barnes mortgage is not too indefinite and uncertain to embrace this covenant, need not now be definitely decided, inasmuch as we think the complaint is bad on another ground.

There is no allegation in the complaint that the covenants in this indenture were sold at the foreclosure of the Barnes mortgage, or that the price which was bid for the property was in any wise dependent on the existence of these covenants. It is averred, to be sure, that the trustee sold at public auction all the property, rights, privileges, franchises, things in action and other things described in the mortgage. Is it permissible that choses in action, instruments in writing, should thus be exposed for sale and swept away in this loose and uncertain manner? What purchaser could bid understandingly when property is thus offered for sale, without any designation or description? Obviously a bidder would not know, and would have no means of ascertaining, whether the choses in action were worth a thousand, a hundred thousand, or a million of dollars. The mortgage, being recorded as a real estate and not as a chattel mortgage, would probably not be even constructive notice to third persons as to the property covered by it. No person, therefore, attending the sale could know what price to bid, or how to regulate his judgment, if there was no specific and certain designation of the property offered for sale. In case of default of payment of any part of the interest or principal for fifteen days, the trustee was authorized to take possession of the mortgaged property and to sell it at public auction, after giving the stipulated notice. A sale at auction and upon notice implies that there is some designation of the thing offered to be sold, so that persons whom the law invites to such auction may be able to know where and what is the property

they are about to purchase. In case of selling a railroad, it might be sufficient to designate the property sold as a railroad between given points, with its rights, privileges and franchises. But it seems to me, if choses in action and legal instruments are to be sold, there ought to be some description or designation of them. Otherwise such sales will be a mere idle ceremony, resulting frequently in great injury to the debtor company, and leading to the most fraudulent speculations. If the covenants in this indenture were actually sold by the trustee, and he bid in reference to them, it should be so averred. If the trustee did not sell them, then clearly the plaintiff company shows no reason why it should have the advantage of them. For, conceding that the mortgage embraced them, yet if they have not passed to the plaintiff company by the sale and conveyance of the trustee, then manifestly that company cannot enforce the covenants in its favor. It claims to be the equitable and legal owner of these covenants, but fails to show title.

The demurrer to the complaint was therefore improperly overruled.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings.

DOWNER, J., took no part in the decision of this case, having been of counsel respecting matters involved in it.