Nelson, D. J.
This action is brought against the defendant sheriff to recover damages for the conversion of personal property, consisting of logs, and lumber manufactured therefrom.
The sheriff defends under a seizure by virtue of certain writs of execution issued upon judgments obtained against the firm of MeCaine Bros. & Barteau, and also sets up pro *129 ceedings instituted by laborers in tbe employment of this firm, as lien claimants under the laws of the state of Minnesota.
Briefly, the sheriff, in his answer, says the logs and lumber were not the plaintiff’s property, and were not in its possession or under its control, but were owned by McCaine Bros. h Barteau; and that executions came into his hands against said firm, and that he had levied upon the logs and lumber as their property.
The plaintiff claims the right to the possession of the property by virtue of a chattel mortgage, and on default of the mortgagor to pay the money secured thereby.
The mortgage is in the form usual in this state. It is a sale of certain logs with conditions, and, in case of default, the mortgagee had the right to take possession and sell, subject to redemption by the mortgagors. It is executed by Mc-Caine Bros. & Barteau to the plaintiff. It acknowledges an indebtedness to the plaintiff of $8,000; and, for the purpose of securing this indebtedness, grants, bargains, sells and mortgages the property described therein as follows: “All, and singular, such, and so many, of all those certain logs belonging to said parties of the first, part, now lying and being in the north fork of Grindstone creek, [so-called,] in the town of Hinckley, county of Pine, and state of Minnesota; and being those certain logs now lying in and along said stream, ready to be driven out when the stage of water will permit, and marked 1 y 1, [read notch y notch,] as are described and designated, as follows, viz : The northerly, or rear, one million two hundred and fifty thousand (1,250,000) feet of said logs, tobe ascertained by commencing at the rear or northerly end of said logs, as the same are situated in the said north fork, as aforesaid, and running along said stream in a southerly direction, and taking, counting, and including all of said logs until the full number of 1,250,000 feet thereof shall have been so counted, taken and set apart; the logs so counted and ascertained to be the logs covered, and intended to be covered, by and included in the mortgage.” The usual condition of defeasance upon payment precedes the following covenants and agreements: “It is hereby mutually covenanted and *130 agreed, between tbe parties hereto, that if default shall be made in the payment of said sum of money, or any part thereof, or the legal interest thereon, at the time or times when, by the conditions aforesaid, the same shall become payable; or if any attempt shall be made to remove or dispose of said property, or any part thereof, by the said parties of the first part, or any other person; or if the said party of the second part shall, at any time, deem itself insecure, that, thereupon and thereafter, it shall be lawful for, and the said parties of the. first part do hereby authorize, the said party of the second part, its successors or assigns, or its authorized agent, to enter upon the premises of said parties of the first part, and any other place or places where the said goods and chattels, or any of the same, may. be, and remove and sell and dispose of the same, and all of the equity of redemption of the said parties of the first part therein, at public auction, with notice, as by the statute in such case made and provided, and on such terms as said party of the second part, or its successors or assigns, may see fit, and out of the proceeds thereof to retain the amount which shall then be owing to the said party of the second part, as aforesaid, its successors or assigns, together with all reasonable charges, costs, and expenses attending the same, rendering to the said parties of the first part, or their legal representatives, the surplus moneys, (if any there shall be,) after paying such mortgage debt, interest and costs, in full. And until default is made, as aforesaid, or until any attempt shall be made to dispose of or remove the same, or any part thereof, the said parties of the first part may continue in the peaceable possession of all the said goods and chattels; all which, in consideration thereof, they engage shall be kept in as good condition as the same now is, and taken care of at their own proper cost and expense.”
It is insisted by the defendant that the mortgage is void for incompleteness and uncertainty in the description of the property mortgaged. There is no controversy about the delivery of the mortgaged property at the time the mortgage was executed. The law prescribing the record and filing of the *131 mortgage was followed. The mortgagee never had possession of the logs. They were left in the river where the mortgagor had transported them.
Default was made in the payment of the money secured by the mortgage, and, by its terms the right of possession was thenceforth in the plaintiff, and it can maintain this suit.
The only question presented is whether the logs are described and designated with such certainty as to enable third parties and creditors of the mortgagors to distinguish the property intended to be mortgaged and identify it.
If the property, or subject-matter, is described so that it may be identified by the terms of, or language used in, the mortgage, and other evidence admissible in such cases, it is sufficient. Herman on Chat. Mort.; Pomeroy on Cont. 226; 20 Wis. 187; 22 Wis. 134.
Until the mass of logs were intermixed and driven into the pond by the mortgagors it was possible for the mortgagee to have taken possession of the specific quantity of logs described and located as the northerly or rear 1,250,000 feet of the logs lying in the north fork of Grindstone creek.
In the case of Richardson v. Alpena Co., cited by defendant, (8 Cent. L. J. 297,) the particular logs mortgaged were not described or designated, in any respect, from the mass bearing the same mark. They were described as a given number of feet of logs, board measure, situated in a stream containing a very large quantity of the same mark, and it was impossible to tell from what part of the mass they should be taken. Here, the mortgage fixed the location of the particular logs, and furnished data for separating them. The written description identified specifically the property mortgaged. It was a transaction made in good faith, and the mortgage was duly registered. It was not necessary to measure or separate them by a boom, or other artificial boundary, in order to make the mortgage valid; nor were the logs required to be measured before the mortgage took effect. The clause in regard to “taking and counting the logs” makes the description more certain by furnishing data by which the location could be determined. A surveyor of logs, or person skilled in their *132 mensuration, with the mortgage before him, going, at the time it was executed, to the Grindstone creek, and examining the logs in the north fork, could ascertain accurately the specific logs mortgaged, which is all that is required to make the mortgage sufficiently definite and certain.
There is some conflict in the evidence about the surrounding facts and circumstances. It is claimed the agent of the mortgagee agreed to permit the mortgagors to drive the entire lot of logs to their mill, and manufacture and sell them. The evidence, however, does not satisfy my mind that such was the understanding.
If I am right in my construction of the mortgage, then, manifestly, so far as the executions are concerned, the sheriff cannot hold the property by virtue of any rights of the judgment creditors as against the plaintiff. The absolute right of possession of the mortgaged property belonged to the plaintiff on default by the mortgagors, which was prior to the seizure, by the sheriff, upon the executions. Authorities are numerous. See Edson v. Newell, 14 Minn. 228, and citations.
Can the sheriff avail himself of the rights which the statute gives certain laborers to secure liens and preferences for services performed ? There is some doubt about the construction of the statute of Minnesota, and the nature of the proceedings nec. essary to establish and perfect the lien given by it. It is not necessary, in determining this case, to consider the rights of claimants under this statute. If the claim is an equitable one, then, conceding that the lien claimants, by serving notice upon the sheriff, did all that is necessary to preserve their liens under the statute, it cannot avail the sheriff to defeat the plaintiff’s right to the property mortgaged. The money in the hands of the sheriff far exceeds the amount of plaintiff’s claim, and the overplus is more than enough to secure payment for the services of the workmen, who urge prior liens under the statute; and, if it is admitted that these workmen have a first lien on all the logs cut, or lumber manufactured, including the logs mortgaged to the plaintiff, the lien not being upon any specific portion, the rule prevails that where there are two funds to which he other lien claimants can resort, *133 while the plaintiff has only one of these, the former must enforce their lien on the fund to which the latter cannot have recourse.
This doctrine shuts out the defence set up under the statute. The sheriff cannot avail himself of his relationship to the claims of the workmen on the fund or money in his hands, for it is more than enough to pay them, and the plaintiff’s rights are superior to those of the judgment creditors.
The logs were not intermixed with the consent of the plaintiff, and, the confusion existing on account of the wrongful acts of the mortgagors, the innocent party will not suffer thereby.
Judgment will, therefore, be entered in favor of the plaintiff.