Sherwood v. Marwick.

## SHERWOOD *vs.* MARWICK.

Whether an action will lie against a vendor for false and fraudulent representations respecting the ownership and character of the thing sold, where the conveyance was by deed with express covenants upon those points ;— *quære.*

One partner cannot render another liable for his fraud, without an actual participation.

The doctrine that a principal is answerable for the fraud of his agent or factor, does not apply to special agents.

The cases in which the court will determine the question of fraud, as an inference of law, the facts being clearly proved or admitted, are those of sale, in which the rights of creditors are concerned, under *Stat.* 13. and 27. *Eliz.* or of sales with intent to defraud creditors, at common law. In other cases of alleged fraud, the imputed intent and *scienter* are subjects for the consideration of the jury.

This was a special action of the case, tried before the Chief Justice, upon the general issue, at *November* term 1826.

The writ contained five counts. In two of them the defendant and one *Richard Sutton* were charged with having sold to the plaintiff, who is a British subject, a certain Spanish vessel; and with having, at the time of sale, falsely and fraudulently represented and declared said vessel to be a British vessel, and entitled to be navigated with all the privileges of that character. In another count the defendant alone was charged with having made such false and fraudu-

lent representations and declarations. In another count it was alleged that such declarations and representations were made by *Sutton*, with the connivance and consent of the defendant ; and in the other, the defendant was charged with having made them through the agency of *Sutton.*

The only 'evidence to prove the false representations alleged in the writ, was a deposition formerly given by the defendant *in perpetuam ;* and the bill of sale of the vessel. The latter document was the grand bill of sale under seal, in the usual form, executed by *Sutton*, as the attorney of one *William Hillyer*, of the island of *St. Kitts*, the apparent owner of the vessel ; which was represented as a British brig, registered at the port of *Sandypoint*, in that island ; and it contained covenants that *Hillyer* was the true owner of the brig ; that *Sutton* was duly authorized to sell her ; and a special warranty against the vendor and his assigns.

The defendant, in the deposition, testified that at *St. Barts*, in 1815, he and *Sutton*, having lost their vessels in a hurricane, agreed to purchase on their joint account a certain brig then ashore, called the *St. Antonio*, sailing under the Spanish flag, and belonging, as he supposed, to Spanish owners at *Havana*. She was sold at auction for 610 dollars, which the defendant paid, and *Sutton* accounted with him for one half. They made the necessary repairs on her, and fitted her for sea ; and wishing to send her to a British port, were obliged to obtain British papers for her. *Sutton* accordingly purchased of some person in *St. Barts* a British register, for which he gave about 250 dollars. This register he took over to *St. Kitts*, to have the transfer completed, and when he returned he brought with him another register, in which *Hillyer* was certified to be the true owner of the brig. *Hillyer* came over with him, bringing one *Bates* to command her ; but he being prevented, *Hillyer* acted as master, and took *Sutton* and *Marwick* with him to *Antigua ;* where she was chartered as a British vessel, and sailed under *Marwick's* command, with a cargo of West India produce, to *New York ;* thence back to *Antigua ;* and thence to *Portland.* Soon after her arrival here she was sold to the plaintiff by *Sutton*, as the attorney of *Hillyer* by virtue of a power which the latter had given him for that

Sherwood *v.* Marwick.

purpose. But *Hillyer* had no interest in her whatever, his name being used merely to cover the property. She belonged wholly to *Sutton* and *Marwick.* The register brought by *Sutton* purported to be the register of the brig *Anna*, captured by the British brig *Boxer*, and condemned in the Vice Admiralty Court at *Halifax*, as prize of war.

On this evidence the Chief Justice instructed the jury, that if they should be satisfied that the defendant was directly or indirectly concerned in, or assenting to any false or fraudulent representations made by *Sutton;* or was guilty of having made such false or fraudulent representations personally to the plaintiff; then they ought to find for the plaintiff;—but that if they were not satisfied on either of those points, they ought to find for the defendant. And they returned a verdict for the defendant, which was taken subject to the opinion of the court upon the correctness of those instructions.

*Fessenden* and *Daveis*, for the plaintiff, argued against the verdict, on these grounds.—1. The judge, upon the facts which were uncontradicted, should have instructed the jury that the proof amounted to fraud, and that they therefore were bound to find for the plaintiff. The evidence of fraud was plenary and incontrovertible, *per se.* It was a necessary inference from the deposition and the bill of sale, and could not be avoided. 1. *Burr.* 393. *Hoyt v. Gilman* 8. *Mass.* 337, 1. *Stark. Ev.* 411.

2. Being a case of fraud and covin, it was purely within the province of the court, as a question of law. The province of the jury is to deal with facts. Where these are not in controversy, and the question is fraud or no fraud, the court are bound to declare the legal inferences, without the aid of a jury. *Foxcroft v. Devonshire* 2. *Burr.* 931. *Doe v. Manning* 9. *East* 59. 1. *Stark. Ev.* 427. Such has been the course in cases of fraud under the bankrupt acts. *Linton v. Bartlett* 3. *Wils.* 47. *Wilson v. Day* 2. *Burr.* 827. *Newton v. Chandler* 7. *East* 144. And in cases under *St.* 27. *Eliz. cap.* 4. and 13. *Eliz. cap.* 5. *Edwards v. Harben* 2. *D. & E.* 587. 5. *Taunt.* 212. *Hamilton v. Russell* 1. *Cranch* 309. *Hil*

*dreth v. Sands* 2. *Johns. Chan.* 49. Where the fraud depends on the act done, it is to be declared by the court; where it depends on the intent, it is to be found by the jury. 1. *Stark. Ev.* 428. 5. *Cranch* 363. *Sturtevant v. Ballard* 9. *Johns.* 337.

3. This was such a case of fraud as the defendant could not gainsay. 2. *Dane's Abr.* 540. It was compounded of fraud and falshood, in which the defendant confessedly participated, at its foundation. *Pasley v. Freeman* 3. *D. & E.* 53. *Holt's N. P.* 387. 2. *East* 108. 3. *Bos. & Pul.* 371. *Evans v. Bicknell* 6. *Ves.* 182. *Bacon v. Bronson* 7. *Johns. Chan.* 201. *Burrows v. Lock* 10. *Ves.* 470. And proof of fraud in one is imputable to both. *Bayard v. Malcolm* 2. *Johns.* 550. 2. *Dane's Abr.* ch. 59, art. 1. 3. *Esp.* 21. *Watson on Partn.* 167. Where two are partners, and one sells the property with fraudulent assertions, and both take the money, both are liable. *Willet v. Chambers Cowp.* 814. 1. *Salk.* 291. 1. *Campb.* 285. *Swan v. Chute* 7. *East* 213. *Boardman v. Gore* 15. *Mass.* 331. 1. *Dane's Abr.* ch. 9, art. 6. So is the law as to principal and agent. The principal is liable, though the fraud was committed by the agent alone, and without authority *Paley on Agency* 229. *Hern v. Nichols* 1. *Salk.* 289. *Bull N. P.* 31. 1. *Com. on Contr.* 242. 2. *Stark. Ev.* 472. *Willis v. Martin* 4. *D. & E.* 39. 1. *Str.* 505. 3. *Esp.* 64. 1. *Sch. & Lefr.* 209. 1. *Campb.* 127. *Grammar v. Nixon* 1. *Str.* 653. 1. *Bos. & Pul.* 404. 1. *Bl. Com.* 430.

*Longfellow* and *Greenleaf*, for the defendant.

These arguments were heard at *May* term 1827; and at this term the opinion of the Court was delivered by

MELLEN C. J. The question is whether correct instructions were given to the jury. They were distinct and explicit; referring to them the facts adduced to prove the guilt of the defendant, as charged in the several counts. The cause was fully argued before them, and the counsel addressed them on all the facts, as the proper tribunal to decide them. When such a course of proceeding is pursued, it is, to say the least, an inconvenience, not to say an inconsistency, for the

Sherwood *v.* Marwick.

same counsel, as soon as a verdict is returned, to object to the instructions of the judge, and the order of conducting the cause, and contend that it was not proper for the jury to draw any conclusions from the evidence; but that the court should have interposed and decided on the facts that the defendant was guilty. However, under these circumstances, the cause is now presented to us for consideration. From the evidence, there can be no doubt that the defendant and *Sutton* were guilty of gross fraud and falsehood, after their purchase of the brig, in obtaining a false register, chartering her as a British vessel, and holding up *Hillyer* as the owner, when it appears they were themselves the owners. But none of those facts were the cause of the loss which the plaintiff alleges he has sustained; that was occasioned by an after transaction; that is, the fraudulent sale made by *Sutton* as attorney to *Hillyer*, and the false representations which it is said accompanied that sale. The question submitted to the jury related principally to the alleged connexion of the defendant with this fraud, direct or indirect, and his participation in the fruits of it. The counsel for the plaintiff contend that, from the facts proved, fraud was an inference of law, and that the court should have instructed the jury to find for the plaintiff. Now this is begging the question. When, without the aid of inference, the facts proved in a cause show the defendant to have done those things which render the transaction fraudulent in legal contemplation, then certainly it is the right and duty of the judge to pronounce the law, and decide the cause at once in favor of the party who has been the sufferer; but where there is conflicting proof, or some necessary facts are to be inferred from others which are proved, then it is the province of the jury to decide the cause, under instructions from the judge as to the principles of law which should govern them. In the present case the only proof of fraud was offered by the plaintiff, and arises from the bill of sale and the deposition of the defendant; the facts therein stated are distinct, and as plain as though stated in a special verdict, and we must consider them in the same manner. In the case of *Harwood v. Goodright Cowp.* 87, Lord *Mansfield* in delivering the opinion of the court says, " in considering this special verdict, the duty of the court is to draw a conclusion of law from the facts found by the jury, for

the court cannot presume any fact from the evidence stated. Presumption indeed is one ground of evidence, but the court cannot presume any fact." The inference as to intention is usually one of fact, to be made by a jury; but in such cases, as in some other instances, where the inference necessarily arises from the facts, it is a conclusion of law which the court can deduce from the facts, without the intervention of a jury. 2. *Stark.* 739. Where fraud depends upon the intention of a party, the existence of that intention is usually a matter of fact, which must be found by a jury, who are to decide on questions of *mala fides.* 2. *Stark.* 588. It is true, in the present case, the question submitted to the jury was one not merely of intention, but also of alleged association, connexion, and conspiracy to defraud; but whether such a fraudulent connexion existed, is a question of fact for the decision of the jury. Suppose the plaintiff, instead of the present action, had commenced an action in the nature of conspiracy, against the defendant and *Sutton,* for defrauding him in the sale of the brig; they could not have been found guilty without evidence of such connexion and conspiracy, satisfactory to the jury. A card maker, his wife and family, were indicted for a conspiracy to ruin another card maker. It was proved that each had given money to the apprentices of the prosecutor, towards accomplishing the mischievous design. It was objected that no two of the defendants were ever together when this was done; but the court said that as they were all of one family, and concerned in making cards, this was evidence to go to a jury. *Rex. v. Cope* 1. *Str.* 144. A similar principle was recognized in *Rex. v. Pywell & al.* 1. *Stark.* 402. Now in the case at bar, as there is no direct and positive proof of the defendant's fraudulent connection with *Sutton,* in the false representations made by him, the inference, from the facts proved, that there was such a connexion, is as much a matter for the jury, as the alleged conspiracy in the above mentioned case of *Rex. v. Cope* was. If A. be present when a murder is committed, and takes no measures to prevent it, and neither apprehends the murderer, nor makes hue and cry after him, and the matter be done in private, the circumstance would, it seems, be evidence to a jury, of consent and concurrence on his part. *Foster's Dis.* 3. *s.* 5. 2. *Stark.* 12.

Sherwood *v.* Marwick.

As the deposition of the defendant is the proof relied on by the plaintiff, to establish the fraud on the part of the defendant, he can not deny the facts which it contains ; so far as it discloses facts they are proved ; but beyond that boundary line the court cannot pronounce any thing as proved. It is true, upon reading the deposition, and examining the narrative he has given of his own misconduct, and connexion with *Sutton,* in the transactions relating to the purchase of the vessel, and giving her a false register, we, laying aside our judicial character, and reasoning as private individuals, may fully believe the defendant was connected with *Sutton* in his fraud, and that all their fraudulent proceedings, from first to last, were known to the defendant, and that he was connected and concerned with *Sutton* in all of them ; yet if such connexion and concern in the alleged false representations at the sale of the brig, is matter of inference from the series of facts disclosed in the deposition, the cause was properly submitted to the jury, the tribunal to weigh evidence, draw conclusions, and infer facts. Now by looking into this deposition, it does not appear that the brig was purchased to be sold again ; but, on the contrary, that the object was to send her to a British port. Nor is there one word in it showing that the defendant knew that a sale of the brig was intended ; or that *Sutton* was to act as attorney of *Hillyer* ; or that the sale was made with the defendant's consent and authority, or even *his* knowledge ; all these things, necessary to establish the defendant's guilt, are matters of inference only, which, as judges, it is not our province to notice, and consider as facts, and satisfactory evidence of his fraudulent connexion with *Sutton.* And in this view of the subject, if the execution of the bill of sale by *Sutton* was *ipso facto* a false and fraudulent representation, there is no proof implicating the defendant in the transaction ; at least the jury have not drawn a conclusion implicating him. Besides, it is questionable whether an action will lie against a vendor for a false and fraudulent misrepresentation of facts as to ownership and character of the article sold, when the vendor derives his title under a deed containing express covenants as to those particulars. And when there is an absence of all proof on the subject of such representations, except the deed or bill of sale, as in the present case, the doubt seems changed

into a certainty, that the vendee must be considered as relying on the covenants in the bill of sale; and a fraudulent and false representation could not be presumed. There is no need of, or ground for, such presumption. But, in opposition to this view of the cause, the the plaintiff's counsel have contended that, as the defendant and *Sutton* were joint owners of the brig, each is answerable for the acts of the other. The authorities cited to show the application of the principle to the present case, do not extend so far; they relate to the power of one partner to bind another by his contracts; not to cases of tort, where one has been guilty of a fraud committed against a third person, and wholly unknown to the other partner. A fraud committed by one of the partners shall not charge the partnership. *Pierce v. Jackson* 6. *Mass.* 242.

Again, it is contended that the defendant is liable for the fraud of *Sutton*, although he was not conusant of it, or assenting to it at the time, on the ground that a principal is answerable for the fraud of his factor or agent. The cases cited to this point relate to the acts of general agents, in whom a general confidence is reposed; and the reason of the principle is, that as some one must suffer a loss, it is more equitable that he who has reposed this confidence should bear it, than a stranger, who, by means of this confidence, has been induced to part with his property by dealing with such agent; but this reasoning does not apply to the case of special agents. Some of the authorities above cited, are actions against masters for injuries sustained by the acts, misdoings, or negligence of their servants. In this view, none of them seem to be similar to the case at bar. But this is not all. The principle, as stated, is based on an assumed fact, viz. that *Sutton,* in making the sale of the brig, was the authorized agent of the defendant. This fact is denied, and the deposition contains no direct evidence of it; it might or might not be inferred by the jury, from facts proved, as we have before stated; but they have not inferred it; and without this fact, the principle contended for is of no importance.

In conclusion, we would observe that, according to decided cases, it seems that the instances in which fraud has been considered a question of law, and to be decided by the court, are those in which

the rights of creditors were concerned; and the principle appears to have its origin and foundation in the construction which has been given to the statutes of the 13th and 27th of *Elizabeth;* or in the common law as applicable to contracts made with intent to defraud creditors; because it is familiar law, that such contracts are good and binding between the parties. In other cases of alleged fraud, the imputed intent and *scienter* are subjects for the consideration of the jury. On the whole we think there must be

*Judgment on the verdict.*