Evans, Assignee, etc., Respondent, vs. VIRGIN and another, Appellants.

*April 15 — June 1, 1887.*

*Abatement of action: Attachment against a partnership: Continuance of suit by assignee for creditors: Fraudulent conveyance.*

1. In an action against a firm for a partnership debt, such firm is " the defendant," within the meaning of sec. 2731, R. S.; and to justify the seizure on attachment of the property of the partnership, some statutory cause therefor must exist against the firm or all the partners.

2. But though, upon a traverse of the affidavit for an attachment against a partnership, the facts set up be not established as against the firm or all of the partners, yet, if such affidavit also charges that one of the defendants "has conveyed and disposed of some of his property with intent to defraud *his* creditors," and that allegation be sustained, his individual property may be seized and held on the writ against the firm. The firm creditors are *his* creditors; he being severally as well as jointly liable therefor. ORTON, J., dissents.

3. An equitable action in aid of an attachment does not abate upon the plaintiff's making an assignment for the benefit of his creditors, but his assignee may, by order of court, be substituted as plaintiff, and the action be continued in his name. ORTON, J., dissents.

APPEAL from the Circuit Court for *Grant* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

It appears from the record that, February 12, 1884, Isaac Hodges, a banker at Platteville, commenced an action against the defendants, in business at the same place as partners under the firm name of N. H. Virgin & Son, upon a balance on account due from the firm to him of $58,752, also upon two notes past due executed by the firm to him,— one for $5,000, and the other for $6,000; and upon affidavits made by Hodges to the effect that N. H. Virgin & Son were indebted to him February 11, 1884, in the sum of

$58,000 over and above all legal setoffs, and that the same was then due upon express contract; that he had good reason to believe, and verily did " believe, that said defendants, . . . and both of them, on said February 11, 1884, were about to remove their property out of the state, with intent to hinder and delay their creditors; and that said defendants, and both of them, on said February 11, 1884, were about to sell their property with intent to defraud their creditors; and that said *N. H. Virgin* had, before said February 11, 1884, conveyed and disposed of some of his property with intent to defraud his creditors;" that thereupon a writ of attachment was issued in said action against said defendants, and certain personal property was attached as the property of said firm, and several pieces of real estate were attached as the property of said *N. H. Virgin;* that said personal property was sold under orders of the court, and the sheriff realized thereon, and held subject to the order of the court, $2,849.08; that the defendants severally answered and traversed said affidavits and attachment; that said defendants jointly answered the complaint in the principal action, to the effect that such indebtedness was largely made up of usurious and compound interest, and for moneys advanced by Hodges to them to buy, deal, and speculate in options in grain, pork, and lard upon the several boards of trade in Chicago, Milwaukee, and New York, for the purposes of their mutual benefit and profit, and at their mutual loss; that Isaac Hodges having made a voluntary assignment for the benefit of his creditors to *J. H. Evans,* the latter, as such assignee, was substituted for said Hodges as plaintiff herein; that, on the trial of said principal action before the referee, he reported to the court, and found, July 15, 1885, that there was due said Hodges, over and above all setoffs by reason of the notes and account alleged in the complaint, $71,287.81, and this was reduced by the court on a modifi-

cation of the referee's report, March 2, 1886, to $67,991.43, and judgment was thereupon entered accordingly.

Upon the trial of the issues of said traverse of said affidavits and attachment, the court, on March 2, 1886, in effect found, as matters of fact, that the first allegation of the affidavit, that *N. H.* and *H. H. Virgin*, and both of them, on February 11, 1884, were about to remove their property out of the state with the intent to hinder and delay their creditors, was not sustained by the testimony; that the second allegation in the affidavit, that the said defendants, and both of them, on February 11, 1884, were about to sell and dispose of their property with intent to defraud their creditors, was not sustained by the testimony; that the allegation "that the defendant *N. H. Virgin* had before said February 11, 1884, conveyed and disposed of some of his property with intent to delay and defraud his creditors," was sustained by the testimony; that said *N. H. Virgin* on October 9, 1882, being then a member of the firm of N. H. Virgin & Son, and said firm being then largely indebted to said Isaac Hodges, did convey certain property owned by him, situated in the town of Platteville, and known as the "Virgin Mill Property," comprising some eighty acres of land, to Mrs. Emma V. Laughton, his daughter, with the intent, by such conveyance, to hinder and delay his individual creditors, and the creditors of N. H. Virgin & Son; that, at the time said conveyance was so made, said *N. H. Virgin* and said N. H. Virgin & Son were largely indebted to various parties, especially to the plaintiff's assignor, Isaac Hodges; and that at the time said conveyance was made, and up to and including the time of the issue of the writ of attachment herein, they were insolvent, and the credit of the firm was almost entirely based upon the separate property of said *N. H. Virgin.*

And as conclusions of law the court in effect found the issues raised upon the traverse of the attachment herein in

favor of the plaintiff and against the defendants herein, and judgment was ordered thereon accordingly. It was thereupon adjudged that said writ of attachment be, and the same was thereby, sustained; and that the property of the defendants seized under said writ of attachment, and then in the hands of the sheriff, be applied towards the payment of the principal judgment therein, with costs. From "the judgment rendered in said cause . . . upon the issue joined by the traverse of the affidavit for the writ of attachment therein, in favor of said plaintiff and against said defendants, . . . and from the whole of said judgment," the defendants appeal to this court.

For the appellants there was a brief by *W. H. Beebe* and *Bushnell & Watkins*, and oral argument by *A. R. Bushnell* and *W. H. Beebe*. They contended that partnership property cannot be seized on an attachment in an action against the firm, unless some statutory cause exists against the firm or all of its members. That such a cause exists as against one partner is not sufficient. *Williams v. Muthersbaugh*, 29 Kan. 730; *Bogart v. Dart*, 25 Hun, 395; *Starr v. Mayer*, 60 Ga. 546; *Johnston v. Mathews*, 32 Md. 363. The conveyance of individual property by one partner in this case was not intended nor calculated to hinder or delay creditors, but was beneficial to them. Keeping the deed off the record could not have that effect and was not evidence of fraud. *Haven v. Richardson*, 5 N. H. 127; *Folsom v. Clemence*, 111 Mass. 277. An intent to defraud must be proved by plaintiff. *Loeschigk v. Hatfield*, 5 Robt. 26; 4 Abb. Pr. 210; *Dygert v. Remerschnider*, 32 N. Y. 629; *Winchester v. Charter*, 12 Allen, 606.

For the respondent there was a brief by *Carter & Cleary*, and oral argument by *W. E. Carter*. To sustain the attachment they cited *Bank of the Northwest v. Taylor*, 16 Wis. 609; *Pratt v. Pratt*, 2 Pin. 395; *Keith v. Armstrong*, 65 Wis. 225; *Kahn v. Angus*, 61 id. 264.

CASSODAY, J.   This action was brought by Hodges against both members of the firm to enforce the collection of debts due to him from the firm, the larger portion of which accrued prior to October 9, 1882.   The attachment was issued, upon the several grounds stated, "against the property of *N. H. Virgin & H. H. Virgin*," which the sheriff was therein "commanded and required to attach and safely keep," etc.   As stated, the sheriff did attach certain personal property belonging to the firm, and also certain real estate, as the property of *N. H. Virgin.*   Upon the traverse of the affidavit and attachment as stated, the same was sustained only on the ground that October 9, 1882, *N. H. Virgin,* being a member of the firm, which was then insolvent, and largely indebted to Hodges upon a credit based almost entirely upon his separate property, conveyed the eighty-five and one-half acres of land to his daughter, Emma, with the intent thereby to hinder, delay, and defraud his individual creditors, and the creditors of the firm.   The facts indicating such intent are stated more in detail in the findings of fact by the court and referee in the case against Emma V. Laughton *(ante,* p. 138), decided herewith.   Upon the record before us, and which is the same, as to the evidence, in all three cases, we do not feel authorized to disturb the findings of the facts by the court in this case.   *Davidson v. Hackett,* 49 Wis. 186.   Upon such facts it is urged by counsel for the defendants that the attachment should have been wholly dissolved for two reasons, which will be considered in their order.

1. The first is, in effect, that no attachment was authorized against the property of the firm upon the ground that *N. H. Virgin,* an individual member thereof, had previously conveyed his lands, or a large portion thereof, to his daughter, with the intent to hinder, delay, and defraud his creditors, including Hodges, who was at the time the principal creditor of the firm.   The learned counsel for the plaintiff.

frankly concedes his inability to find any case where such an attachment upon such property has been sustained upon such a ground; and after very diligent search we are compelled to make the same admission. In *Williams v. Muthersbaugh*, 29 Kan. 730, cited by counsel for the plaintiff, the attachment was sustained as to the property of the firm, and dissolved only as to the separate property of the nonoffending partner. But this question in that case was not squarely raised by the traverse, nor decided by the court, but only incidentally considered. In such a case the interest of the offending partner in the property of the firm may undoubtedly be attached; but where, as here, the firm is insolvent, that question has no practical significance. A careful examination of numerous decisions leads to the conclusion that, unless the statutes otherwise provide, partnership property cannot be seized and held on attachment against the firm for the collection of a partnership debt, except where each member of the firm has committed some one of the several acts which the statutes make a ground for attachment. Under our statutes the affidavit for the attachment must state "that the defendant named in such writ is indebted to the plaintiff," etc., and must also contain "a further statement" to the effect "that the defendant has" done, "or is about to" do, one of the several acts prescribed, or "that the defendant is" in one of the several conditions stated. Sec. 2731. Although the word "defendant" is used in the singular number throughout the section, yet it "may extend and be applied to several persons,   .   .   .   as well as to one person." Subd. 2, sec. 4971, R. S. So there seems to be nothing in the statute authorizing us to take the case out of the general rule stated, and it must therefore be held to be applicable. As indicated, the affidavit stated a good ground for attachment against the property of the firm, and was therefore a protection to the officer; but, as it was not sustained in that

regard upon the traverse, it should have been dissolved, so far as the firm property was concerned.

.2. The other ground upon which the learned counsel for the defendants insist upon the attachment being wholly dissolved is, in effect, that, as the attachment was to enforce the collection of a firm indebtedness, and in form against the members and the property of the firm, it could not properly be levied upon the separate property of *N. H. Virgin* as an individual member of the firm. The statutes provide, in effect, that when two or more persons are indebted on any joint contract, and either of them dies, his estate shall be liable therefor, and the claim may be allowed by the court or commissioners as if the contract had been joint *and several.* Sec. 3848. But, without such statute, it was recently held in England that the creditor of a partnership firm has concurrent remedies against the estate of a deceased partner and the surviving partner, and that it makes no difference which remedy he pursues first. *In re Hodgson (Beckett v. Ramsdale),* L. R. 31 Ch. Div. 177.

Upon this theory it has been held that a debt contracted by an insolvent firm is provable in bankruptcy against an individual member of the firm. *Curtis v. Woodward,* 58 Wis. 504–507. So the statutes provide, in effect, that where, in an action against several persons jointly indebted upon a contract, the summons is served upon one of them only, the plaintiff may proceed against the defendant served; and, if he recover judgment, it may be entered in form against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all, and the separate property of the defendant served. Subd. 1, sec. 2884, R. S. A judgment in favor of a firm creditor against all the members of the firm, when docketed, becomes a lien upon the separate real estate in the county of each of the partners. R. S. sec. 2902; *Meech v. Allen,* 17 N. Y. 303. Under our statutes an attachment is an ancil-

lary or provisional remedy in or dependent upon the principal action. Sec. 2730, R. S.; *Cummings v. Tabor*, 61 Wis. 185. Its office is to seize and hold such property as would be liable to execution in the principal action until a judgment can be recovered therein, and an execution issued thereon. *Goll v. Hinton*, 8 Abb. Pr. 122.

There can be no question but what each member of a copartnership is severally as well as jointly liable for the debts of the firm. *Camp v. Grant*, 21 Conn. 41; *S. C.* 54 Am. Dec. 321; *Bardwell v. Perry*, 19 Vt. 292; *Wisham v. Lippincott*, 9 N. J. Eq. 353; *Cunningham v. Gushee*, 73 Me. 420, 421. Thus, in the case last cited, it is said by the court: " He who owes as a partner is himself just as much a debtor as though the debt was contracted in his individual capacity. The debt is due personally from each member of the firm. Not infrequently the partnership creditor relies largely upon the ability to pay, and the credit of the individual partners, and there are no partnership funds accessible. That he is the creditor of both the partners surely should not postpone his claim to that of a creditor to whom one of them alone is indebted." Thus, in *Abbot v. Smith*, 2 W. Bl. 949, DE GREY, C. J., said: " The contract, when made with partners, is originally a joint contract, but it may be separate as to its effects. Though all are sued jointly, and a joint execution taken out, yet it may be executed against one only. Each is answerable for the whole, and not merely for his proportionable part."

There can be no doubt but what an execution to enforce collection of a judgment against all the members of a firm may be properly levied upon the separate property of any member of the firm. While the seizure of property upon an attachment to enforce the collection of a firm debt is limited to the property of the offending partner, yet there seems to be no more reason why such separate property may not be taken upon an attachment in form against the

firm, than there is why it may not be taken upon an execution in form against the firm.   *Goll v. Hinton, supra.*   This proposition is, in effect, sustained by some of the cases cited by counsel for the defendants upon the other point, and particularly the case from Kansas.   But there are authorities which go further.   Thus, in *Stevens v. Perry*, 113 Mass. 381, the court said: " It is well settled, as matter of law in this commonwealth, that, in a suit against two or more copartners upon their joint debt, the separate property of any one of the partners may be attached, and the lien so acquired is not discharged or impaired by a subsequent attachment of the same property upon a suit in favor of a separate creditor of the same partner."   This, and the earlier Massachusetts cases upon which it was based, were expressly sanctioned in *Cunningham v. Gushee*, 73 Me. 421.   To the same effect are *Wisham v. Lippincott*, 9 N. J. Eq. 353; *Straus v. Kerngood*, 21 Grat. 584; *Shackelford's Adm'r v. Clark*, 78 Mo. 491; *Meech v. Allen*, 17 N. Y. 300; *Emanuel v. Bird*, 19 Ala. 596; *Baker v. Wimpee*, 19 Ga. 87; *Fullam v. Abrahams*, 29 Kan. 725; *McCulloh v. Dashiell's Adm'r*, 1 Har. & G. 96; *S. C.* 18 Am. Dec. 271.   But, notwithstanding this array of authority, it should be said that there are cases in New Hampshire and elsewhere not in harmony with the last part of the proposition quoted from the Massachusetts court.

That proposition certainly goes much further than is necessary to maintain this attachment; for here there is no contest between a firm creditor and any subsequent attaching individual creditor of *N. H. Virgin*, whose separate property was here attached.   As indicated, while the interest of *N. H. Virgin* in the partnership property might have been attached subject to an accounting, yet, as not only the firm, but H. H. Virgin, were hopelessly insolvent, such attachment would necessarily have been fruitless.   No question, therefore, as to the marshaling of assets growing out of the equity of the partners, or of some creditors having a.

lien upon two funds and others only upon one, arises in the case. *Gallagher's Appeal*, 114 Pa. St. 353. Here none are before the court except the partnership creditor and his assignee and the debtors,— each party contending for what are claimed to be strict legal rights under the statutes. We must hold that the attachment was properly sustained as to the separate property of *N. H. Virgin.*

3. The suit and the attachment were commenced by and in the name of Hodges personally. His assignment to the plaintiff for the benefit of creditors necessarily transferred to the latter all his claims against the firm, and also against the partners severally. As the cause of action was such as survives and continues, the action did not abate by reason of the transfer. Sec. 2800, R. S. The statute provides that notwithstanding such transfer, " the action may be continued by . . . the original party, or the court may direct the person to whom the interest is transferred . . . to be substituted in the action." Sec. 2801, R. S. Here such substitution was made by order of court, duly entered. The assignment imposed upon the assignee the duty of diligently and faithfully collecting and reducing to money the property assigned to him. Sec. 1694, R. S. The power to enforce the collection of debts clothed him with the ordinary remedies for enforcing collection. For that purpose he stood in the place of and represented the assignor, and hence could continue and secure the benefit of such actions and proceedings as he had instituted. This is not questioned by the learned counsel for the defendants.

· *By the Court.*— The judgment of the circuit court upon the traverse of the attachment is reversed in part, and affirmed in part, as indicated in the opinion, without costs to either party, except the clerk's fees are to be paid by the appellants. The cause is remanded for further proceedings according to law.

ORTON, J.   I most respectfully dissent from the decision
in this case and in *Evans v. Laughton*, *ante*, p. 138, because
it has not gone far enough, and agree with it so far as it
has gone as to the various grounds of error.

   The first of these cases [*Evans v. Virgin and another*]
may be stated as follows:   An action was commenced by
I. Hodges, banker, against *N. H.* and *H. H. Virgin*, under
the name and style of N. H. Virgin & Son, on their partner-
ship indebtedness to said Hodges, of over $58,000, on the
12th day of February, 1884.   An attachment against the
property of said firm was issued upon the following affida-
vit:   "That said defendants, *N. H. Virgin* and *H. H. Vir-
gin*, and both of them, on said February 11, 1884, were
about to remove their property out of the state, with intent
to hinder and delay their creditors; and that said defend-
ants, and both of them, on said February 11, 1884, were
about to sell their property, with intent to defraud their
creditors."   This affidavit, so far, was sufficient to author-
ize the attachment that in fact was issued against both of
said defendants as *partners*.   This is clear enough.   The
attachment commanded the sheriff "to attach and safely
keep all the property of the said defendants, *N. H. Virgin*
and *H. H. Virgin*, within your county, or so much thereof,"
etc., " as security for the satisfaction of such judgment as
the plaintiff may recover *in said action*."   This is a regular
attachment against the defendants as a *firm*, the same as if
the action was against the *firm*, and on a firm indebtedness.
On this attachment, *and no other*, the partnership property,
as well as the separate property of each of the partners,
was levied upon, as perhaps might have been lawfully done.
Any lawyer would suppose that this was all there was of it.
But this affidavit, so far, was traversed, and the court
found that such traverse was *sustained*, and the court was
asked to proceed according to sec. 2746, R. S., and tax the
costs, and order that the property attached be forthwith de-

livered up to the defendants. This was refused, and why? Here comes in one of the strangest anomalies in legal practice ever heard of. Following what is above quoted in the affidavit, there is this item of mere *surplusage*, viz.: "And that said defendant *N. H. Virgin* had, before said February 11, 1884, conveyed and disposed of some of *his* property, with intent to defraud *his* creditors." What has this to do with an attachment against N. H. Virgin & Son, issued in a suit against the firm, on a partnership debt, on the ground that they were about to remove or dispose of their property, with intent to defraud *their* creditors. This part of the affidavit would be proper and pertinent only to obtain an attachment against *N. H. Virgin* alone, and his property, by one of *his individual* creditors. There was no such action, and there was no such attachment. There was no such case. But, in fact, no effect whatever was given to this clause of foreign matter. To give it any legitimate effect, another attachment should have been issued, in favor of some personal or private creditor of *his*, and against *N. H. Virgin* alone, for he is charged only of having defrauded his own *individual* creditors, and the plaintiff Hodges is not one of them, according to the action and affidavit, but a creditor of the *firm* only. Of course, it is surplusage, and nothing else, and should have been, and probably was disregarded by the circuit court as impertinent matter. An attachment had been issued against the partnership on an affidavit charging the partnership with fraud, and all the property of the firm, and of the individual partners, had been taken on the writ. Is not that enough? On the trial of *N. H. Virgin's traverse* of this mere scandal, the circuit court found against *him;* not against the defendants in the action, and in the attachment, according to the statute, but against him alone, under this clause. Well, what of it? What is the consequence, or what should it be, except the end of a mere farce? But lo, for this reason, and for this

reason alone, the attachment against the *partnership* is sustained! The only cause or basis of the attachment was gone when the traverse of the only charge upon which it issued, or could issue, was found in favor of the defendants, and the attachment is sustained, upon a charge on which it did not and could not issue. Such is the logic and law of this ruling. It was most clearly erroneous; and so this court holds, as I understand it, that the attachment should have been quashed, so far as the partnership and partnership property are concerned.

To this extent I agree with my brethren, but when they go further, and hold that this same attachment is valid so far as *N. H. Virgin* and his individual property is concerned, then I most respectfully dissent. I think such holding fully as absurd as that of the circuit court, and more so, if anything could be. The circuit court sustains the attachment as it is, and as an attachment against the firm. So holding, there is a consistency in holding also that such an attachment could be levied upon the individual property of the partners. That court undoubtedly saw the dilemma in which it would be placed, unless the attachment against the firm was sustained; for then there would be no attachment at all, for any purpose, as this was the *only one.* It was valid, or it was not. It could not be sustained as an attachment against *N. H. Virgin* alone, or his separate property, for there was no affidavit charging that *N. H. Virgin* alone, or as an individual, had defrauded the creditors of the firm, or I. Hodges as a creditor of the firm, by conveying away his individual property. He was charged only of having defrauded his individual creditors, of whom Hodges was not one, by conveying his separate property. It comes to just this: the affidavit charging both of the defendants with having defrauded their creditors is out of the question, and out of existence, for on the traverse the court found for the defendants that the charge was not true. The

other charge in the affidavit, that *N. H. Virgin* had defrauded his individual creditors, is sustained. Will that *sustain* any part of the attachment which is against the firm? If it will, then precisely such an affidavit would be sufficient cause for *issuing* such an attachment. If this charge alone, that *N. H. Virgin* had conveyed *his own* individual property, with intent to defraud *his own* individual creditors, was in the affidavit, or was in the only affidavit that was made, could any attachment have issued in the case, either against the firm, or against *N. H. Virgin, in favor of I. Hodges?* A necessary part of the affidavit was that the defendants as partners were indebted to him in the sum of $58,000, etc. How would this agree with the charge? He is not charged with defrauding Hodges as a creditor of the firm, or any creditors of the firm, but only with defrauding *his own* creditors. The affidavit does not state that *N. H. Virgin*, alone or as an individual, is indebted to Hodges in any sum whatever. Such an affidavit would not warrant the issuing of any attachment whatever, much less an attachment against the firm. No more can it be used to *sustain* any such attachment. But, again, *N. H. Virgin* as an *individual*, and *N. H. Virgin* as a *partner* in a firm, is a very different person in the law. In an attachment against two persons as partners, the partnership is the party defendant, and the partnership property is primarily subject to the attachment. The partnership in such a case is indivisible. The attachment must stand against the firm if at all; it cannot be made an attachment against an individual partner under any circumstances. When the cause for an attachment exists only against one of the partners, an attachment cannot be issued against the firm. The distinction is too obvious for argument. In this case the firm is insolvent in respect to *its* creditors, and *N. H. Virgin* is probably so in respect to *his.* The property of the firm, and that of *N. H. Virgin* as an individual, must therefore

be respectively appropriated to the payment of the debts of each.

The propositions above stated would seem to be too plain for doubt. There are *axioms* in law, as well as in mathematics, not susceptible of demonstration or proof beyond their mere statement, and there are therefore but few, and there should be no decisions upon them. A few cases only, which have a direct bearing upon these questions, will be cited. Our own statute on attachments, which, according to all authority, must have a strict construction, is plainly against the practice here adopted by the circuit court, as well as the decision of this court. It requires an affidavit to be made, stating that "the *defendant named in the writ* (the defendant here named in the writ is the firm or partnership of 'N. H. Virgin & Son') is indebted to the *plaintiff*," etc.; then, as to the cause or ground for the attachment, "that the *defendant* (the firm) is about to remove," etc., " or is about to assign," etc., " with intent to defraud," etc. The creditors to be defrauded must of course be the *defendants'* creditors, and not the creditors of each partner. If these charges are successfully *traversed*, the grounds of the writ are gone; there is nothing left of the attachment for any purpose. In *Keith v. Armstrong*, 65 Wis. 225, there was an attachment against a partnership, and the affidavit charged the defendants (naming all the members of the firm) with having disposed of *their* property, with intent to defraud *their* creditors, and yet this court treated the attachment as against the firm. The firm had made an assignment before the traverse, and the chief justice says in the opinion, "It is obvious that though the *defendant* may have made an assignment," etc. The fraud was the appropriation of the assets of the firm by one of the partners to pay his own debts. This was held to be the fraud of the firm, and the chief justice discusses the case solely in the light of partnership law. In *Howitt v.*

*Blodgett*, 61 Wis. 376, much stress is laid upon the language of the statute allowing a *defendant* in attachment to traverse the affidavit. The defendant in the attachment must do this, notwithstanding such defendant has made an assignment. When the statute uses the word "defendant" it means either an individual, partnership, or corporation as the party defendant in the action. So, in this case, the firm of N. H. Virgin & Son is the defendant, within the meaning of the statute. As in garnishment, the indebtedness must be stated as either joint or *several*.

In *Pratt v. Pratt*, 2 Pin. 395, it was held that if the attachment is against joint debtors, even, the affidavit must show a cause for it against all of them, or that those who are omitted are insolvent, or out of the jurisdiction of the court. Much more must the cause of an attachment against a firm lie against the firm, and if it is the act of one partner, it must be such an act as binds the firm. This must be so, or you obtain an attachment against persons who are neither guilty of nor charged with any fraud or wrong. "The proceedings by attachment," said this court in the above case, "are among the most summary and stringent known to the law, and they should be confined *strictly* within the limits of the statute." As said by the learned counsel of the respondent in his brief, and supported by cited cases in this court: "Each of them [partners] is bound by the acts of any of the others, done for the *common benefit* or *within the scope* of the *partnership business*, even though such act be a tort or a fraud." That is, the act must be such an one as will bind the firm, in order to obtain an attachment against the firm as in this case. The disposition of his own individual or private property to defraud his individual creditors is most clearly not such an act.

In *Bogart v. Dart*, 25 Hun, 395, the affidavit charged the defendant, John A. Swezey, with having, by fraud and deceit and forged bills, obtained money from the plaintiffs, and

with having absconded and departed from the state. The attachment was issued against the partnership composed of said Swezey and one Joseph Dart, under the firm name of Swezey & Dart. The supreme court held that the attachment against the firm property, when the cause existed only against one of the partners, could not be sustained. In *Starr v. Mayer*, 60 Ga. 546, it was held that, "when the *debtor* is a partnership, the debtor is in a situation to be attached whenever *all of the members* composing the firm are in that situation." In *Pierce v. Jackson*, 6 Mass. 242, it is held that an attachment against the goods of a partnership cannot be maintained by a creditor of one of the partners. This is exactly in point, if it had been alleged that Hodges was a creditor of *N. H. Virgin* alone; and it is overwhelmingly in point because it is not so alleged, and it is alleged that *N. H. Virgin* defrauded only his own individual creditors, of whom it does not appear that Hodges is one.

"Fraud committed by one partner, while acting in his own business, cannot be imputed to the partnership." 1 Colly. Partn. § 456. "On a judgment against a partnership, the execution must issue against all the partners." 2 Colly. Partn. § 790. So, on a partnership indebtedness, the attachment must issue against the partnership. "When the debt is due by the firm, and the cause of attachment exists against one only, the attachment cannot issue against such one." Drake, Attachm. § 37, note 4. In *Sherwood v. Marwick*, 5 Me. 295, it is held "that one partner cannot render another partner liable for his fraud without an actual participation in it." In *Williams v. Muthersbaugh*, 29 Kan. 730, it is held "that an attachment can be maintained against only such of the defendants as have by their acts, rendered themselves liable to an attachment." In *Sears v. Gearn*, 7 How. Pr. 383, it is held that "the copartnership property cannot be seized on an attachment against one absconding debtor." In *Cowdin v. Hurford*, 4 Ohio, 132, it

is held that an attachment against one of the joint contractors alone cannot be issued upon the joint debt. In *Connon v. Dunlap*, 64 Ga. 680, this same question was raised, and it was held that the attachment could only be maintained by the statute of that state, which provided that such an attachment might issue if all the other partners were out of the state. In a case of foreign attachment against one of the firm, the property of the firm cannot be taken. 2 Colly. Partn. 1142; *Witter v. Richards*, 10 Conn. 37; *Church v. Knox*, 2 Conn. 523. The reason given is that the firm is not the *defendant*, and only the property of the *defendant* in the attachment can be seized.

It follows from these authorities, and many more which might be cited if necessary, that the attachment in this case, being against the partnership, upon an affidavit charging both the partners with the attempted fraud, which charge has become nugatory by the *traverse*, should have been totally dissolved, both as to the partnership property, and the individual property of *N. H. Virgin*. The fact will bear repeating, that *N. H. Virgin* alone is not charged with being the debtor of the plaintiff, or " with having defrauded the creditors of the firm." In this case against *N. H. & H. H. Virgin*, the judgment of the circuit court should have been fully and unqualifiedly reversed, and not retained for any purpose whatever. The authorities cited in relation to mere joint debtors are not fully applicable, and the principles above insisted upon, in many such cases, are not so rigidly insisted upon, but in nearly all such cases they have been applied. But how can there be any hesitation in applying principles so apparent, and sanctioned by reason, law, and common sense, and so plain that no sophistry or technical quirks or evasions can possibly obscure?

In the case of *Evans v. Laughton, ante*, p. 138, a bill in equity was filed against *Emma V. Laughton* by I. Hodges, to set aside a conveyance of certain real estate to her by

her father, N. H. Virgin, on the ground that it was made to defraud the creditors of said N. H. Virgin. The bill is predicated upon the lien obtained upon said real estate by the attachment against N. H. Virgin & Son, in the first above case, having been levied upon it. By the decision of this court, the judgment of the circuit court is reversed, on the ground that said conveyance is a mortgage, for certain moneys advanced by the mortgagee, *Emma V. Laughton*, which went into the permanent improvement of said real estate, and that for such moneys the equitable right of reimbursement should have been saved to her in said judgment. This court refused to reverse said judgment on the ground that the evidence did not sustain it, or that the plaintiff obtained no lawful lien upon said real estate, or that the assignee of said plaintiff could not be substituted as plaintiff in said suit,— the fact being that the plaintiff, I. Hodges, made a voluntary assignment of his property for the benefit of his creditors, after said suit was commenced.

I concur in the decision that the said *Emma V. Laughton* ought to be reimbursed, out of said mortgaged property, so far as her moneys went into it to enhance its value, and dissent because the judgment was not fully reversed on the three other grounds above stated.

*First.* The evidence does not sustain the charge that said *Emma* participated in any intent to defraud the creditors of her father, N. H. Virgin, if there was any such intent on his part, which I think is at least very doubtful, by that conveyance. The only facts proved upon which the charge against her rests were that she knew that her father was considerably in debt, and was embarrassed for want of present means, and that she assented to his request that the mortgage should for a time remain unrecorded. If there had been other evidence of fraud, these facts might be circumstances of corroboration. But, standing alone, they do not prove fraud. If being in debt, and needing present

means, make a mortgage for borrowed money fraudulent and void, then there never could be, and never was, an honest loan of money made. A business man needs to borrow money only because he is under some such necessity. But such is not the law. *There was not a particle of evidence that she knew that her father was* INSOLVENT. That was absolutely necessary, by all authority, as a fact, to prove fraud in such a case. Alas, it is true, that *Emma* knew that her poor old father was in debt, and in want of present means to restore his old water flouring-mill to usefulness by reconstructing it with steam-power and patent rollers. The stream was dried up, and the mill was worthless to himself or to his creditors. He was dependent upon it for the support of himself and wife, and to make money to pay his debts. He thought, and judged rightly, that if his mill could be thus made into a modern one, with approved appliances, he could manufacture flour for market at a good profit and make money. His health was poor, and he was getting old, but, if he could obtain the means necessary to this enterprise, he had hope that he could live comfortably and pay his debts. These were the only facts present when he appealed to his daughter, then on a visit to her old home, and who had money that she could spare, for a loan of $6,000 to be used in this enterprise. What affectionate daughter could resist such an appeal? The mortgage was made, the money was advanced, and what was necessary went into the mill. It was a final success, and the mill is now valuable. The father, N. H. Virgin, through a sensitiveness that any old reputable business man who had been prosperous and in good credit, and had never before been embarrassed or had mortgages on his property, would very naturally feel, requested his daughter to withhold this mortgage from record so long as she could safely do so. She, in unsuspecting and innocent kindness, assented. This was all there was of it. Was this a fraud? Call it anything else

that it is. Call it natural affection, love, pity, mercy, char- ity, benevolence, and filial confidence and trust, but not *fraud*. She was to put her money into the property of her father, to greatly enhance its value; nay, to make that property of any value whatever, to him or *to his creditors*. It was in fact a loan to the creditors themselves, as if she had loaned it to them for the same purpose. Have the creditors lost anything by it, or been injured by it? Of course not. They have been benefited by it. Suppose she knew that her father was insolvent, which she did not: what then? She was an intelligent woman, and she must have known that in such a case her money would be to the *sole* advantage of her father's creditors. Would it even then have been fraudulent? The property was made that much more valuable to them, and in fact it made it much more valuable than the amount of the money, for it saved it to them from utter worthlessness. By what strange per- version of reason could a fraud upon creditors be educed from such facts? Is the verdict of a jury that finds such a transaction fraudulent so sacred that it must not be dis- turbed by this court? I trust not. To allow *Emma V. Laughton* to be reimbursed for her investment in this prop- erty is conclusive that it was no fraud. But yet that ver- dict is allowed to stand that blisters her name and reputation with a proven charge of fraud. That will not do. It is wrong, unreasonable, and unlawful. I cannot assent to it.

*Second.* It was necessary that the plaintiff should have had a lawful lien upon the individual property of N. H. Vir- gin by the levy of an attachment upon it before this bill could be filed or this suit brought. We have seen that the attachment, being itself dissolved or not, could not be levied, continued, or even procured, upon the cause set out in the affidavit. There was no lien upon the individual property of N. H. Virgin by this attachment, and therefore the circuit

court had no jurisdiction in this suit, and the judgment for this reason should have been wholly reversed.

*Third.* After the said plaintiff had made an assignment, his assignee was substituted, by leave of the court, as plaintiff, and thereafter the proceedings were conducted and the judgment rendered in his name. This was unquestionably erroneous, and the error is jurisdictional. If the assignee, after the suit was brought, could be so substituted as and for the plaintiff, then he could, of course, have *brought* the suit if the assignment had then been made. The assignee of a voluntary assignment for the benefit of creditors cannot bring such a suit in equity to avoid or set aside a sale or mortgage made by a debtor of the assignor to defraud his creditors. It is elementary that such a sale or mortgage is not void, but is *voidable only*, at the suit of such creditors as may see fit to question it in that way. This has been so decided over and over again by this court, and is a proposition that is unquestionable. (1) The right and option to question such a sale or mortgage is personal with the creditor, and can be exercised by no other person. (2) The right to bring such a suit is not assignable by the creditor, and does not pass to the assignee. This has been decided by this court, and the question is settled in this state. In this case the right to bring this suit is a mere naked right. The fraud does not relate to any property that was assigned or could be assigned by the assignor. It never was the property of the assignor, and he has no claim upon it or interest in it as property. The assignor can claim only the right to set aside this mortgage upon the property of his debtor, so that he may collect his claim against his debtor in money out of it.

In *Crocker v. Bellangee*, 6 Wis. 646, Bellangee obtained the interest of one Casey in certain lands by deed upon false and fraudulent representations, and Casey conveyed

and assigned such interest to Crocker, and Crocker sought to set aside the conveyance of Casey to Bellangee on the ground of such fraud. This court held that the right to bring this suit was not assignable by Casey to Crocker, and affirmed the order sustaining the demurrer to the bill on that ground. Chief Justice WHITON said in the opinion: " We are of the opinion that the deed from Casey to Bellangee (admitting it to have been obtained by a fraud practiced by the latter upon the former) was not absolutely void, but voidable only at the *election of Casey.*" It was contended that if that was so, then Casey had exercised that option by conveying his right to Crocker. But the chief justice said sententiously, " We do not see how this effect can be given to the deed to Crocker." This case is cited, and this principle applied, in *Mil. & M. R. Co. v. Mil. & W. R. Co.* 20 Wis. 174. That case is sufficiently stated in the opinion of the present chief justice. The plaintiff company claims to have the right to object to and set aside all conveyances, negotiations, sales, and transfers which have been made or suffered by the La Crosse & Milwaukee Company, with intent to defraud its creditors, by having acquired the property of the company defrauded, etc. The chief justice said: "In other words, is this mere right to litigate the question, and to set aside the deed of release on account of fraud practiced upon the assignor, a subject of assignment and transfer, and will a court of equity allow the assignee, to stand in the shoes of the assignor in respect to the remedies?" Admitting that the plaintiff occupied that position, the chief justice sanctioned the doctrine that the right of such an action was in the La Crosse & Milwaukee Company, which could be asserted or not at the option of that company only, and by no one else, claiming as assignee or grantee, and applied the principle asserted in *Crocker v. Bellangee, supra,* by citing the case, to such supposed facts, and approved it, as well as the case

of *Prosser v. Edmonds*, 1 Younge & C. 481.   The case turned, however, on other facts, but this doctrine was clearly held to apply to such a case if such had been the facts as claimed.   The case of *Prosser v. Edmonds*, *supra*, affords a full exposition of this principle in application to just such a case as this, where one takes a trust by assignment, and the property affected by the fraud is not assigned, but there is a mere naked right to file a bill in equity.   The lord chief baron said: " But where an equitable interest is assigned, it appears to me that, in order to give the assignee a *locus standi* in a court of equity, the party assigning that right must have some substantial possession, some capability of personal enjoyment, and *not a mere naked right to overset a legal instrument.*"   That case is very long and contains the fullest discussion of this principle of any in the books, and is often referred to.   Any lawyer reading the whole case will have no doubt, that such an assignee has no right to bring such an action.

In Ohio there was a statute, similar to our present statute, allowing an assignee to bring an action to set aside fraudulent transfers of the assignor.   In *Shorten v. Woodrow*, 34 Ohio St. 645, it was held that where an insolvent debtor had purchased land, and had the same conveyed to a third person by the grantor, and such third person conveyed it to the wife of such debtor, in order to defraud his creditors, such a case did not come within said statute.   In *Zabriskie v. Smith*, 13 N. Y. 332, the assignor was induced to sell goods to an insolvent merchant, by the false and fraudulent representations of the defendant.   It was held that the right to bring the action was personally and exclusively with the assignor, and was not assignable.   That was a voluntary assignment for the benefit of creditors.

Cases might be multiplied involving the same principle, but this court has fully settled the question, and upon the true reasons.   I think it safe to assert that no case like

this, brought by an assignee of a voluntary assignment, was ever before sustained. This right of action, or, rather, to file a bill in equity, to set aside a sale or mortgage made by a debtor of the assignor, merely to facilitate the collection of the debt, is very remote from any property assigned. It was at best a mere naked right to bring the suit, of which the creditor might avail himself or not at his option. Such a sale or mortgage is valid between the parties and privies of it, and is only avoidable by the creditor who sees fit to avoid it. The case, in principle, is exactly like those decided by this court. The assignor could continue to prosecute it, if he saw fit; otherwise he could abandon it, as he did; but he could not assign the right to either bring or prosecute such an action. It would be in violation of an old and well-established principle for him to do so, and there is no statute allowing it. It was frequently held by this court, before a statute was passed allowing it, that an assignee could not file a bill to set aside transfers of property by his assignor made to defraud his creditors; and in *Howitt v. Blodgett*, 61 Wis. 376, it was held that the assignee could not be substituted as defendant in an attachment suit against his assignor, by virtue of sec. 2801, R. S., providing for *devolution of* liability. The principle is too important to be lost by a new, unsupported, and arbitrary precedent. The assignee who may be bold, litigious, and dashing, and who is always disinterested, for he has nothing to lose, and disposed to kindly patronize the legal profession, might bring hundreds of such suits in chancery, against a multitude of debtors, when the assignor would not have been willing to bring any, and thus waste the estate in costs. This would savor strongly of champerty and maintenance, and this very reason is given in some of the cases for the non-assignability of such a naked and speculative right of action.

· I have made this dissenting opinion longer than I should.

But there are two cases embraced in it, and many very important questions which have been resolved, as I think, into very dangerous precedents.